The inhabitants of the town of STRATFORD *against* SANFORD
                    and others.

The removal of paupers having no settlement in this state, from the town in
    which they reside and are chargeable, to another town, thereby throwing
    the burden of their support upon the latter town, is an actionable injury ;
    for which the appropriate remedy is an action on the case.
And it is no objection to this remedy, that the party resorting to it is a corpo-
    ration, not expressly authorized, by its charter or any general statute, to vin-
    dicate its rights in this mode.
It makes no difference with respect to the right of action, whether such re-
    moval was effected in good faith, or with a fraudulent intent.
Nor is it any defence, that the removal was effected, by virtue of a warrant,
    obtained by the defendants, as select-men of the town from which the pau-
    pers were removed, from the civil authority of that town ; the issuing of
    such warrant being a ministerial, and not a judicial act.
The general rule, that leading questions are not allowed on the examination

in chief, is subject to the discretion of the court ; and the admission of evidence in answer to such questions, is not a ground for a new trial.

Where the town of *D.*, in an action against two of its inhabitants, for transporting certain paupers therefrom to the town of *S.*, assumed the defence of such action ; it was held, that this did not render a vote of the town of *D.* admitting the act complained of, and undertaking to indemnify the defendants, admissible in evidence against the defendants.

In such case, the rule of damages was held to be, the amount necessarily and in good faith expended in supporting the paupers, from the time of their removal to the time of trial.

THIS was an action on the case.    The declaration embraced two counts.

The first count stated, That on the 5th of *October*, 1825, *Sally Bevans*, then pregnant with child, and her three infant children, *Edwin, John* and *Caroline*, no one of whom had ever had any legal settlement in *Stratford*, or had ever been there, were residing in the town of *Danbury*, and being paupers, utterly destitute of the means of subsistence, were chargeable to and supported by that town ; that the defendants, who were inhabitants of the town of *Danbury*, and taxable therein, knowing the premises, but contriving and fraudulently intending to cast the burden of supporting these paupers on the town of *Stratford*, and thereby to relieve the town of *Danbury*, and themselves as inhabitants thereof, from the expense of supporting such paupers, transported them, on the 5th of *October*, to *Stratford*, and left them there, in want and distress ; and that, by reason of the premises, the plaintiffs were by law obliged to support them, and expended in their support, the sum of 700 dollars, they having continued to reside in *Stratford* until the commencement of this action, and having no place of settlement to which they could be legally removed.

The second count stated, That the defendants were selectmen of the town of *Danbury*, and in order to relieve themselves and the town from the support of the paupers, and to subject the plaintiffs thereto wrongfully, the defendants, as such selectmen, made an *ex parte* application to the civil authority of *Danbury*, and untruly represented to them, that the paupers were settled inhabitants of the town of *Stratford*, and thereby fraudulently procured a warrant, directed to a constable, commanding him to transport them to the town of *Stratford* ; which warrant was in form conformable to the statute ; and that by virtue of such warrant and by the procurement of the defendants, the constable, on the 5th of *October*, 1825, trans-

ported the paupers to *Stratford* and there leave them, in a state of utter indigence and helplessness; in consequence of which the plaintiffs were obliged by law to support them, and did support them, &c.

The plaintiffs suffered a non-suit as to all the defendants, except *Elijah Sanford* and *Elijah Gregory*.

The cause was tried at *Fairfield, December* term, 1831, before *Bissell*, J.

To prove the facts stated in the declaration, the plaintiffs read in evidence the deposition of *Levi Starr*, the constable, containing, among other matters, the following interrogatory and answer: " *Question.* According to your best recollection, was not the warrant given to you, either by *E. Sanford* or *E. Gregory? Answer.* I cannot tell, positively, who gave it to me. I think it was *Elijah Sanford* or *Elijah Gregory ;* but which, I cannot say." The defendants objected to this part of the deposition, on the ground that the question put was a leading one. The judge overruled the objection and admitted the question and answer to be read in evidence.

*Sanford* was present in court ; and the defendants' counsel admitted, in his presence, that the town of *Danbury* had assumed the defence of this case, and that they (the counsel) appeared and acted therein as counsel for the town. In connexion with these admissions, the plaintiffs offered in evidence the following vote of the town, passed at a town-meeting legally holden, on the 15th of *November*, 1830 : " Voted, that this town will indemnify the select-men appointed in 1824, for all expense which may be made them, for transporting *Benjamin Bevans's* family." There was no evidence, that either of the defendants was present at such meeting, or that they had any knowledge of the vote. And thereupon the defendants objected to its being read in evidence. The judge overruled the objection and admitted it.

*Benjamin Bevans*, the husband of *Sally*, and father of her children, was the son of *Henry Bevans*, who resided in *Middletown*, in the state of *New-York*, from 1795 to 1803, where he gained a legal settlement, and where *Benjamin* was born ; and the paupers were legally settled in that town, when they were removed from *Danbury* to *Stamford*. The defendants offered evidence to prove, and it was not denied, that previous to the year 1795, *Henry Bevans* had gained a legal settlement in the town of *Stratford*. The defendants claimed, that all

*Fairfield,*
*June, 1832.*

Stratford
*v.*
Sanford.

their acts in procuring the removal of the paupers were done by them as select-men. The plaintiffs proved, that there were then seven select-men of the town, and that the other five did not concur with the defendants in applying to the civil authority for a warrant. The defendants insisted, that in applying for a warrant and in procuring the removal of the paupers, they acted in good faith and without fraud ; and that they had no knowledge that the paupers did not belong to the town of *Stratford.* They further insisted, that unless the jury should find that they knew that the paupers did not belong to *Stratford,* and so were guilty of actual fraud in procuring their removal, the plaintiffs could not recover, and prayed the judge so to charge the jury.

The defendants also claimed, that if the jury should find, that the warrant was issued by the civil authority, and that the paupers were removed by virtue thereof, and by direction of the defendants as such select-men ; yet as such warrant was conformable to the requirements of the statute, and as it appertained to the civil authority to judge of the lawfulness and expediency of granting it, their verdict must be for the defendants, unless they should find, that the defendants made application without probable cause, knowing that the paupers had no legal settlement in *Stratford ;* and the defendants prayed the judge so to instruct the jury. The judge instructed the jury, that it being admitted, that the paupers, when removed, had no legal settlement in *Stratford,* and were then a charge on *Danbury,* if they should find, that the defendants procured their removal, in the manner claimed, the plaintiffs were entitled to recover.

The jury returned a verdict for the plaintiffs ; and the defendants moved for a new trial, on the ground that the interlocutory decisions of the judge and his charge to the jury, were erroneous, and also in arrest of judgment for the insufficiency of the declaration.

*Betts* and *Booth,* in support of the motions, contended, 1. That that part of the deposition of *Starr,* which was objected to, was inadmissible, the question being a *leading* one, and such as could not be put. 1 *Stark. Ev.* 122, 3—5. 1 *Phill. Ev.* 205.

2. That the vote of the town of *Danbury* was inadmissible. In the first place, it was not evidence as the admission of a

party ; *Danbury* not being a party. Secondly, the vote, by its terms, related to *the select-men,—i. e.* all or a majority of them, and did not purport to affect a minority. The defendants are but two out of seven. Thirdly, the vote was not binding on the town. It was not a grant or an agreement, but a mere resolution, without consideration, which the town could rescind at pleasure. Besides, it offered an indemnity for the performance of an unlawful act, (as the plaintiffs claim ;) and on that ground, it was not binding.

3. That the charge was incorrect as to the rule of damages. The only ground on which damages are claimed, is, that the plaintiffs were *obliged* to support the paupers. But this they were not obliged to do, after a reasonable time for their removal had elapsed. Secondly, there could be no recovery for damages which accrued subsequently to the commencement of the suit. 2 *Wms. Saund.* 171. *c. Com. Dig. tit.* Damages. D. *Denison* v. *Hyde* & al. 6 *Conn. Rep.* 509. 519, 520.

4. That upon the facts claimed by the defendants, as stated in the motion, this action cannot be sustained. The application of the defendants to the civil authority, was a lawful act. It was the right of the civil authority to *judge* whether the application was properly made ; and their determination is to be regarded as a judgment. In carrying the warrant to the officer to be executed, acting as the defendants did in good faith and without fraud, they went on a lawful errand. Upon the facts claimed by them, they did no unlawful act ; and the jury should have been so instructed.

5. That upon the facts stated in the declaration, this action cannot be sustained. In the first place, the plaintiffs cannot sue. Towns are corporations ; and as such, have such rights and powers, and such only, as their respective charters and the general statutes relating to towns, have given them. Had the legislature prohibited the act complained of, under a penalty, and given that penalty to the town aggrieved, the plaintiffs might have sued for it ; but the fact is otherwise ; and this foundation failing, the plaintiffs have none to stand on. 4 *Com. Dig.* 871. (*Day's* ed.) *Crouse* v. *Mabbett* & al. 11 *Johns. Rep.* 187. Besides, the action is not brought on any general statute or private act. Secondly, the defendants are not liable at common law. If the act done was not unlawful, it is immaterial with what intention it was done. Now, it was clearly lawful for the paupers to go from *Danbury* to *Strat-*

ford : and it was equally lawful for the defendants to trans-
port them thither. 3 *Burn's Just.* 380. *Masters* v. *Child*, 3
*Salk.* 66. *Crouse* v. *Mabbett* & al. 11 *Johns. Rep.* 167. *Jen-
kins* & al. v. *Waldron*, 11 *Johns. Rep.* 116. *Rous* & al. v.
*Moore* & al. 18 *Johns. Rep.* 407. *Grant* & al. v. *Fancher*, 5
*Cowen* 309.

*N. Smith* and *Sherman*, contra, contended, 1. That the de-
position of *Starr* was properly admitted. In the first place,
it was not exceptionable as containing a leading question. A
general question was first put ; and the witness could recol-
lect nothing about the matter. A more particular question
was then put, to awaken the witness's recollection. This is
the usual course ; it is a proper one, and necessary for the in-
vestigation of truth. But secondly, were it otherwise, this is
a mere matter of *discretion* in the court, and not a ground for
a new trial. (*a*)

2. That the vote of the town of *Danbury* was properly re-
ceived. The action proceeds on the ground that the paupers
were removed for the benefit of the town ; and it appears,
that the town had assumed the defence, and become the prin-
cipal. The defendants were only agents. The vote was the
act of the real party. It admitted that the defendants did
transport the paupers ; and thus conduced to prove the charge.
2 *Stark. Ev.* 41.

3. That the charge was correct in relation to damages. The
act complained of is the wrongful removal of the paupers.
For this there can be but one recovery. The verdict must
embrace all the damages immediately resulting from the
wrongful act ; otherwise the plaintiff may be partially remedi-
less. Though no act done subsequently to the commence-
ment of the suit, can constitute a ground of recovery ; yet in
the estimation of damages resulting from an act done before,
the jury may take into view the whole injury sustained. The
plaintiffs were under no obligation to search for the paupers'
place of settlement, and to remove them to it. At any rate,
the defendants cannot claim this of them.

4. That the charge was correct as to the liability of the de-
fendants. Even upon the facts claimed by them, they did an

(*a*) One of the counsel for the defendants here said, that this objection
would not be further insisted on.

unlawful act, to the damage of the plaintiffs. Whether their motives were pure or impure, makes no difference with respect to the right of action. The fact that they were *select-men*, does not shield them. Without insisting on another fact, *viz.* that the defendants were only two out of seven select-men,—a majority or all of the select-men are agents of the town to do only what the law has authorized them to do ; and beyond this their official character has no effect. *The Thames Manufacturing Company* v. *Lathrop* & al. 7 *Conn. Rep.* 550. 557. Nor can the defendants derive any justification from the act of the civil authority. They acted *ministerially.* They rendered no judgment : their determination was not *res adjudicata.* They could not, indeed, act judicially, being *interested.*

5. That the declaration was sufficient. It states, in both counts, a wrongful act of the defendants,—done too with a fraudulent intent,—and an injury to the plaintiffs resulting immediately therefrom. Here is every ingredient of an action on the case.

HOSMER, Ch. J. The action of trespass on the case, which the plaintiffs have brought, is a universal remedy given for all personal wrongs and injuries without force ; and in general, it is sustainable, whenever the plaintiff has suffered damages, by the wrongful and illicit conduct of the defendant.

That damage has arisen, in this case, from the defendants' act, is a fact clearly stated ; and the only enquiry is, was the act injurious or wrongful ? It is not necessary, that it should be perpetrated through fraud, as in the argument was contended ; for this is one species of wrong only. Every injury to another is entitled to a remedy ; and it is no matter of what description the fact is, if it be a wrong accompanied with damage. This constitutes it a legal injury ; and every injury of this description, is equally to be vindicated, by its appropriate remedy.

The first count in the plaintiffs' declaration, avers, that damage has accrued to the plaintiffs, by the act of the defendants, who intentionally transferred to them a burden, that rested on *Danbury*, and on the defendants as inhabitants of that town. The act is equally immoral and illegal. It is neither compatible with private justice nor public convenience, that individuals should thus relieve themselves, and the town in which they

reside, by casting their misfortunes on others. It is their duty to bear them, until they legally can redress themselves.

In respect to the second count, the defendants are, in no degree, relieved from the principles advanced. The warrant for removal, obtained, is no justification. It is a ministerial act only, obtained by the false representation of the defendants. There is nothing in it of a judicial nature ; nor in this state, has it ever been so considered. In a court or forum for the administration of justice, there are three constituents ; the *actor, reus,* and *judex.* Here, there was no *actor,* or plaintiff ; no *reus,* or defendant ; and no *judex,* or judge. The civil authority have confided to them, without calling in the party in interest, and without any legal mode of revising their doings, a ministerial act, on the application of persons having an interest. In *England,* and in the state of *New-York,* where the proceeding is held to be judicial, there is a legal mode by appeal, and in a strictly judicial manner, for the administration of justice between the parties interested ; but it is not so here. The appointment of appraisers by a justice, or of an overseer by select-men, is as much of a judicial act, as is the issuing of a warrant for the removal of paupers. *Hill* v. *Fox,* 1 *Conn. Rep.* 295. *Betts* v. *Dimon,* 3 *Conn. Rep.* 107.

Were it necessary, it would not be difficult to show, that the abuse of judicial process, fraudulently obtained by a false representation, would not justify the defendants.

It has been said, that the rights of corporations depend on their charters ; and that no authority is given for the maintenance of actions at common law.

The principle alluded to is misconceived. Undoubtedly, the legal capacity of a corporation, is alone created by the sovereign power. It cannot act as a corporation, nor hold land or property, nor do any thing else, until it is legally authorized. But where it is duly constituted, and has imparted to it certain rights and privileges, it is a moral person, and may vindicate and preserve all its rights, by the common and statute laws, as all other persons may, except so far as it is restrained, by its charter, or by express law. The error of the defendants' argument, consists in confounding the rights of a corporation, with the mode of vindicating them. 15 *Johns. Rep.* 383. In the latter, the laws are open to them for redress, usually, as for other moral persons.

It has been argued, that as the paupers might voluntarily

have gone to *Stratford*, so may the defendants remove them thither. Between these cases there is no analogy. The pauper goes to a town, without any obliquity of intention; for to him it is immaterial, by what corporation he is supported. But the defendants acted on the unjustifiable principle, of obtaining the removal of a burden from themselves, and casting it, without any reason, upon another. And if such conduct is authorized, it is easy to perceive, what instances of inhumanity and inconvenience, it may occasion.

Such of the cases cited by the defendants, as are entitled to consideration, I will now attend to. The case of *Crouse* v. *Mabbett* & al. 11 *Johns. Rep.* 167. has no bearing on the question under discussion. It was a suit for the bringing of a pauper into a town, *who afterwards fell sick*, and became a public burden. There is no fact stated, from which it appears that the pauper had required, or would require relief; or that his sickness was at all anticipated. No wrongful act was done, unless it be wrong to accompany a poor man into a town.

The case of *Jenkins* & al. v. *Waldron*, 11 *Johns. Rep.* 114. was an action against the inspectors of an election, for refusing a vote, as the exercise of deliberate judgment, and without malice. That such a suit was not sustainable, is not to be questioned. The inspectors acted *involuntarily*, in the necessary exercise of their duty, and were obliged to accept or reject the vote. But not so the defendants. They were *voluntary* agents, in no matter of prescribed duty, and acting from obliquity of motive.

*The Overseers of the poor of Pittstown* v. *The Overseers of the poor of Plattsburgh*, 18 *Johns. Rep.* 407. has no bearing on this case. The latter obtained an order of removal of a pauper, adjudicating his legal settlement to be in *Pittstown*; the order was quashed; and having been removed pursuant to it, the action was brought for not supporting him or taking him back. The court adjudged, that the order of removal, it was presumable, was *bona fide*; and that it was the duty of *Pittstown* to remove the pauper back to *Plattsburgh*, and therefore, that the action was not sustainable. Had the order of removal been obtained *mala fide*, as was the one in the case before us, the determination probably would have been different. Even as it was, it was said by *Spencer*, Ch. J. (*p.* 419.) that he thought it ought to have been made the duty of the overseers of *Plattsburgh* to take back the pauper at their own

expense.   The same case had been before the same court, at a former term, (15 *Johns. Rep.* 436.) when it was a fact admitted, that the pauper had *no legal settlement* in the state of *New-York.*   It was by the court then adjudged, that the action was maintainable, on the principle, that a, burden had unjustly been thrown upon *Pittstown,* by the procurement of the overseers of the poor of *Plattsburgh ;* and that the pauper having no legal settlement in the state, it was their duty to have exonerated *Pittstown* from the burden they had cast on them.   And the difference in the above determination rested on this ; that at one hearing, the pauper was supposed to be settled within the state, and instead of an action, it was said, he ought to have been removed to his legal settlement ; but at the other hearing, when the pauper was admitted to be settled *without the state,* the action was held to be sustainable.   On the whole, the determination clearly goes to establish the sufficiency of the plaintiffs' declaration.

There exists no doubt, that the judgment ought not to be arrested.

I now come to the motion for new trial ; and the first objection has been given up, and requires no discussion.  I merely will remark, that although, as a general rule, leading questions are not allowed on the examination in chief ; yet if the witness appears to be in the interest of the other party, or unwilling to give evidence, the court will, in its discretion, permit the examination in chief to assume the form of a cross-examination.   1 *Phill. Ev.* 205.  1 *Stark. Ev.* 122 to 127.  It is, then, not a peremptory and exclusive rule, but is always subject to the court's discretion ; and in all events, is not a ground for new trial.

The next objection is made to the admission of the vote of *Danbury,* to affect the rights of the defendants.   The objection, undoubtedly, is well founded, and ought to prevail.  *Danbury* was no party to the action ; and was not made such, by assuming the defence of it.   There is no case determining a person to have become a party, on such ground.   The cases of *Bauerman* & al. v. *Radenius,* 7 *Term Rep.* 663. and *Bulkley* & al. v. *Landon* & al. 3 *Conn. Rep.* 76. merely establish this principle, that the defendant may give in evidence the declaration or admission of the plaintiff *on the record,* to defeat the action, although the plaintiff appears to be only a trustee for a third person.   But that a person may assume the defence

of an action, and by virtue of such assumption, thrust himself in as a party, is a novelty, and without any ground of support. The irrelevancy of a vote or agreement of indemnity, made six years after the commission of a tort, and to save harmless the tort-feasor; made, likewise, without his knowledge or consent, and without any apparent consideration, furnish other grounds of objection against the admission of the vote. It is, however, unnecessary to discuss them. As *Danbury* is no party to the plaintiffs' action, the admissions or declarations by her, are hearsay only, and cannot be admitted to affect the defendants.

It has been insisted, that the defendants procured the removal of the pauper *as select-men*, and acted throughout in good faith; and for these reasons, that the plaintiffs' suit ought not to be maintained.

The answer to this has already been given. The defendants procured the removal of paupers, burdensome to *Danbury* and themselves, as inhabitants of that town, under a false suggestion, that they were settled inhabitants of *Stratford.* Either the defendants knew this, or had good reason to believe it, and very little or none to suppose the contrary. The paupers had never been in *Stratford;* were born in the state of *New-York;* and *Henry Bevans*, in whose right they make their claim, had resided in *Middletown*, in that state, from 1795 to 1803, where he gained a legal settlement. The slender pretext of the defendants, is, that before the year 1795, he was settled in *Stratford.* It is hardly consistent with good faith, that after the lapse of about thirty years, it should be assumed, without enquiry, that this absent man had not obtained another settlement.

But this defence, slight as it is, wholly fails. There were seven select-men in *Danbury*, and two of the select-men only concurred in obtaining the warrant of removal. The select-men never applied for it, nor concurred in the transactions, on which the plaintiffs' suit is founded. They were entirely the unauthorized and wrongful acts of individuals.

One further ground alleged for a new trial remains; and that is, the rule of damages. The court charged the jury, that the plaintiffs had right to recover damages, to the time of trial. On the contrary, it is argued, that it was the duty of *Stratford* to remove the paupers to their legal settlement; and hence, that they can recover damages only, for a reasonable

*Fairfield,*
*June, 1832.*

Stratford
*v.*
Sanford.

time after their burden commenced; that in all events, there can be no recovery after the date of the writ.

The legal settlement of the paupers was unknown to *Stratford ;* nor was it their *duty* to go out of the state, in search after this fact. The law has devolved on them no such obligation. If they had gone in search of the paupers' settlement, and either had or had not found it, their expense would form no item of claim against the defendants, as a compensation for their service.

To this effect is the cited determination from the state of *New-York,* (*Overseers of the poor of Pittstown* v. *Overseers of the poor of Plattsburgh,* 15 *Johns. Rep.* 436.) advancing the principle, that where a removed pauper has no settlement within the state, it is the duty of the party removing *to exonerate those who have an unjust burden cast upon them.* This is in analogy with the most common and familiar principles. If a stick of timber is tortiously put on the land of another, he may remove it, if he pleases; but if he does not, the trespasser must pay damages, so long as he suffers the timber to remain. If the plaintiffs might bring their action *toties quoties,* the rule that damages shall be limited to the commencement of suit, would apply. But in this case, the recovery, as in trespass for assault and battery, exhausts the entire cause of action. All the damages, then, sustained by the plaintiffs, to the last moment of estimating them, are justly recoverable.

In result, a new trial is advised, only for the admission of the vote of *Danbury* in evidence.

The other Judges were of the same opinion.

New trial to be granted.