## AVON MANUFACTURING COMPANY *vs.* ROMEO ANDREWS.

The owners of a mill pond executed a deed to the owners of a grist-mill situated below and supplied by a race-way from the pond, in which, after reciting the fact that the grantees and those under whom they held title "had been accustomed to take water from the pond for operating their said grist-mill," conveyed to them, their heirs and assigns, " the right at all times hereafter of taking and using the water from said pond for operating any other mill which shall be hereafter erected upon the site of their present grist-mill, to the same extent that they now have a right to do, or have been accustomed to do, for the operating of their said grist-mill." Held that the effect of the grant was not merely to extend to the new mill that might be substituted for the grist-mill the rights, already existing as such, with regard to the grist-mill, but to give the grantees a right to all the use of the water to which they and their grantors had been *accustomed*, without reference to the question whether such customary use had ripened into a right.

The plaintiffs, who had become the owners of a factory substituted for the grist-mill, brought an action on the case against the defendant, who had become the owner of the mill pond and of a mill thereon, alleging that they had " the right to use the water of said stream for the supplying of their said factory with necessary water, and *that the same should flow without interruption to, through, and along their said race-way to their said factory, according to the natural and usual flow of said stream;* " and averring that the defendant for the purposes of his own mill had shut it back so that it would not flow into the plaintiffs' race-way. In support of their claim the plaintiffs on the trial offered in evidence the above deed, with proof that the owners of the grist-mill, at and prior to the execution of the deed, had been accustomed to open a certain gate in the dam, at such times as it was necessary, and thus to furnish themselves with water from the pond for their mill. Held, by HINMAN, C. J. and DUTTON, J., that the evidence was admissible, as proving only a limited right covered by the general right alleged; SANFORD and BUTLER, Js., dissenting, on the ground that it was a right of a different kind.

The defendant had previously brought an action against the plaintiffs, for wrongfully opening the gate in the dam, by which their race-way was supplied, and drawing off water to the injury of his mill. The present plaintiffs had pleaded the general issue, with notice that they should prove the same right now set up. The present defendant recovered judgment. He now offered that judgment in evidence, with proof of the matters gone into under the pleadings, and claimed that it was conclusive evidence that the plaintiffs had not the right which they now claimed. The judge charged the jury that it was a question on the evidence what reply the present defendant in fact made to the claim set up by the present plaintiffs in their notice ; that if it was a denial, and on the denial the jury found that the right claimed did not exist, it would be conclusive upon the plaintiffs who were now asserting again the same right; but that if the defendant had admitted the right of the plaintiffs to draw water from the pond and had claimed to recover merely on the ground that they had drawn off more than they

were entitled to, the judgment, founded merely upon this abuse of the right, would not be conclusive against the existence of the right; and that the question in which of these modes the issue was formed was one of fact, to be decided by the jury on the evidence. Held, that the charge was erroneous, as there could not be an issue made up partly in writing and partly by parol, and the question what issue was made was wholly one for the court.

Action on the case for the obstruction of a stream of water; tried to the jury in the superior court, before *Waldo, J.* The declaration was as follows:—

"That the plaintiffs are, and from the 16th day of June, 1857, have been, legally seized and possessed of a certain piece of land situated in said Avon, bounded [describing it,] with a certain building used as a cotton factory thereon, and the privileges and appurtenances thereto belonging; which said factory is situated near to a certain stream of water called Nod Brook, from which stream, by means of a race-way, extending from said stream to said factory, the plaintiffs have heretofore, to wit, ever since they became seized thereof in June, 1857, had, and now have, the right to use and enjoy the water of said stream for the supplying of their said factory with necessary water for the working thereof, and that the same should flow, without interruption, to, through, and along their said race-way to their said factory, according to the natural and usual flow of said stream of water, without the hindrance of the defendant or any other person. That the defendant during the same time has been and still is in the possession of a certain saw-mill and fuse-factory, on land above the said factory and race-way of the plaintiffs on said stream, and also of a mill-dam and mill-pond, and the appurtenances thereof, connected with said saw-mill and fuse-factory. That the defendant, well knowing all the rights of the plaintiffs, wrongfully and injuriously, and without any right on his part, on or about the 16th day of June, 1857, and on divers other days and times from that day to the date of this writ, by means of said pond, dam, and appurtenances connected with said saw-mill, has deprived the plaintiffs of the use of said stream of water, by stopping and shutting back the same for his own convenience, without regard to the rights of the plain-

tiffs, and with intent to injure the plaintiffs, and has stopt said water at different times on each day from one to two hours at a time, and at times for a longer period, during the three years last past; and thereby, during the whole of said time has delayed and hindered the business of the plaintiffs in said factory; and the value of the plaintiffs' land and buildings aforesaid, and machinery therein, has been greatly lessened by the said wrongful acts of the defendant; to the damage of the plaintiffs the sum of four thousand dollars, &c."

The defendant pleaded the general issue, with notice that he should prove a right to the use of the water for his own mill superior to the right of the plaintiffs to the water for their factory, and that all the acts done by him and charged in the declaration were done under such superior right.

On the trial it appeared that the defendant was the owner of the dam and mill-pond described in the declaration and of a saw-mill and fuse-factory situated thereon, and that the plaintiffs were the owners of a cotton factory situated near the stream and some distance below the defendant's dam, and supplied with water by a race-way into which the water was admitted by a gate in the flume connected with the dam, the defendant using another gate in the same flume; and it appeared that this was the only mode by which the water was admitted to the race-way and carried to the plaintiffs' factory, except when it ran over the top of the dam or flume, or when the defendant was using his own mill, in which case the water discharged passed into the plaintiffs' race-way.

The plaintiffs derived their title from Luther Wheeler, Evelin Woodford and Helen Wheeler, and the defendant his title from Darius Sperry. In the year 1847, Sperry, who then owned the mill and privilege now held by the defendant, executed, with certain other parties interested in that privilege and another above, the following deed to the said Luther Wheeler and others, who then owned the mill site and privilege now held by the plaintiffs, there being at that time a grist mill on the place now occupied by the plaintiffs' factory.

"Whereas, Luther Wheeler, Evelin Woodford and Helen Wheeler, all of Avon in the state of Connecticut, are the own-

ers of a certain tract of land situated in said town of Avon, containing by estimation about one-third of an acre, and bounded [describing it,] on which land there is now, and for many years last past has been, a grist-mill, used and occupied as such, and operated by water supplied by a stream called Nod Brook ; and whereas, across said stream, above said grist-mill, there are now and for many years past have been two dams maintained and kept up, and ponds formed thereby, by means of one of which a certain carding machine owned by the subscriber Charles Whittlesey, and a saw-mill and clothier's works belonging to the subscriber Darius Sperry, and by the other of which a grist-mill owned by the said Harry Chidsey, are operated and carried ; and whereas the said Luther Wheeler, Evelin Woodford and Helen Wheeler, and those under whom they claim and hold title, have been used and accustomed to take and draw water from said ponds respectively, for operating and working their said grist-mill, so standing upon their said land :—Now know all men by these presents, that we, the said Whittlesey, Sperry and Chidsey, in consideration of one dollar to each of us in hand paid, each for himself, his heirs and assigns, severally and respectively, and not otherwise, so far as we have a lawful right to do, grant, transfer, and convey to the said Luther, Evelin and Helen, their heirs and assigns for ever, the right at all times hereafter of taking, drawing and using the water from said dams and ponds respectively, for the working, operating or carrying any other mill or mills, machinery or establishment which shall be hereafter set up or erected upon the site of their said present grist-mill, or within the distance of ten rods in either direction from the same, to the same and no greater extent than they now have a right to do, or have been accustomed to do, for the working, operating or carrying of their said grist-mill.   In witness whereof, &c."

The plaintiffs offered this deed in evidence, together with evidence that, at the time of the execution of the deed, the grantees and sundry other former owners of the grist-mill had been accustomed to open the gate in the flume and let the water into their race-way whenever it was necessary for their

mill; and they claimed the right to take the water from the flume in the same manner. To the admission of the deed and parol evidence offered with it the defendant objected, on the ground that the right declared on was a right to the natural flow of the stream without obstruction, while that proved by the evidence offered was an easement in the land of the defendant—a mere right to enter upon his land and by opening a gate. in the flume to draw water from the pond of the defendant. He also objected to the deed by itself, because it did not sustain the allegations of the declaration, which he claimed were of a right as riparian proprietors, and not of a special right to the use of the water granted by deed. Also to the evidence of the usage, on the ground that it was not such a continued and certain use as would be presumptive of a grant. The court admitted both the deed and the parol evidence—the latter solely for the purpose of showing what the usage was at the time of the execution of the deed and thus showing what right was intended to be conveyed by the deed.

The defendant also claimed that by the true construction of the deed no new or more extensive right to the use of the water was intended to be given, but merely the right to use the water for another mill that should be built in the place of the grist-mill, and that the clause with regard to the customary use of the water was to be restrained by the express provision that the grantees were to use the water " to no greater extent than they now have a right to do," and requested the court so to charge the jury. The court however charged the jury that the deed granted the right to use the water for another mill, not only to the extent of the right which the grantees then possessed, but to the same extent to which they and those under whom they held had been accustomed to use the water.

The defendant also offered in evidence the record of a judgment recovered by him against the plaintiffs, in the superior court at its session in Hartford county in December, 1860, in an action on the case brought for the wrongful acts of the present plaintiffs in opening the gate in the flume and drawing off the water from the mill pond for their factory below, to

the injury of his mill, and in which the plaintiffs had pleaded the general issue, with notice that they should offer proof of the same right to take the water which they were claiming in the present suit. The defendant claimed that the jury, by their verdict in his favor, had found that the plaintiffs had not the right now claimed, and introduced parol evidence to show that the same matter now in controversy had been gone into before the jury in that case ; and he requested the court to charge the jury that if they should find that to be the fact, the judgment was conclusive proof that the right now claimed by the plaintiffs did not exist. The charge of the judge upon this point is so fully stated in the opinion of the court, in connection with comments upon it, that it is not necessary to state it here.

The jury having returned a verdict for the plaintiffs, the defendant moved for a new trial for errors in the admission of evidence and in the instructions to the jury.

*C. Chapman* and *F. Fellowes*, in support of the motion.

*T. C. Perkins* and *J. C. Parsons*, contra.

DUTTON, J. Two questions only in this case require the decision of this court. The first is whether parol evidence was admissible to show what was conveyed by a certain deed, and the other whether the deed itself was admissible in support of the allegations in the declaration.

1. The litigation in this case undoubtedly had its origin in the different constructions given by the parties to a deed from Charles Whittlesey and others to Luther Wheeler and others, from whom the plaintiffs derive title, dated April 13, 1847. This deed transfers to the said Wheeler and others " the right at all times hereafter of taking, drawing and using the water from said dams and ponds respectively, [previously referred to in the deed,] for the working, operating or carrying any other mill or mills, machinery or establishment, which shall hereafter be set up or erected upon the site of their present grist mill, or within the distance of ten rods in either direction

from the same, to the same and no greater extent than they now *have a right to do*, or *have been accustomed to do*, for the working, operating or carrying of their said grist mill." The plaintiffs offered parol evidence to show the manner in which, and the extent to which, the said Wheeler and others had been accustomed, at and prior to the giving of the deed, to take water from the pond of the defendant, which was on the stream in question above the plaintiffs' factory. To this the defendant objected, but the court received it for the sole purpose of showing what was meant by the expression " or was accustomed to do." The defendant insists that his ruling was erroneous. He asks us to infer from a consideration of all the parts of the deed, which appears in full in the case, that it was not the intent of the grantors to transfer to the grantees any right to the water which they did not own before, but merely to confirm their existing rights and authorize them to use them at a different place. We think that this would be doing violence to the plain language of the instrument. The grantors convey to the grantees the right of taking water " to the same and no greater extent than they now have a right to do, *or have been accustomed to do*." The construction claimed would require that these last words should be stricken out. If any general inference to the effect claimed by the defendant could be drawn from the other parts of the deed, which however we do not think is apparent, the construction must be against the grantors, and these words must have some effect given to them. If this could be supposed to refer to rights acquired by prescription, they would be superfluous, as all existing rights had been specified, and it could make no difference whether such rights had been acquired by prescription or otherwise. If this is the proper construction of the deed then clearly this evidence was admissible. 1 Greenl. Ev., § 288. *Doolittle* v. *Blakesley*, 4 Day, 265.

2. In the next place, it is with great apparent confidence insisted that the deed and evidence connected with it were improperly admitted to prove the allegations in the declaration, on the ground of variance.

First, it is claimed that the plaintiffs allege a right as

riparian proprietors, and that the proof is of a title by deed. This claim is founded we think on a manifest misapprehension of the averments in the declaration. The strongest of them is, that the plaintiffs were entitled to the right that the water " should flow without interruption to, through, and along their said race-way to their said factory, according to the natural and usual flow of said stream." There is not an intimation in the declaration that the plaintiffs claimed the right as riparian proprietors. Indeed the plaintiffs' land is not even bounded on the stream. Their factory is said to be situated " near to a certain stream called Nod Brook, from which stream or brook, by means of a certain canal or race-way extending from said stream to said factory," the water is brought to it ; clearly implying that the factory stands at some distance from the stream. No declaration was ever drawn setting out a riparian right without very different averments. The terms " natural and usual flow," are used merely to show the extent of the plaintiffs' claim. The same objection was made and overruled in the case of *Twiss* v. *Baldwin,* 9 Conn., 291, in which the declaration contained the identical words. Williams, J., in giving the opinion of the court in that case, says (page 304 :) " If the allegation respecting the natural course of the stream, or the right to enjoy it without interruption, were stricken out, it would not affect the plaintiff's right to recover."

In the second place it is strongly insisted that the evidence admitted tended to prove in the plaintiffs an easement in the defendant's land ; that is to say, a right under certain circumstances to go upon it and open the gates to his pond, as well as a right to the water of the stream. If this evidence was claimed and admitted for any such purpose, there would be weight in the objection. But it manifestly was not. The plaintiffs' right to the use of the water accrued by virtue of a deed, and he could not show his right to the water without reading the deed in evidence. The whole deed and accompanying evidence must be taken together to show what right the plaintiffs had to the water of the stream. It has been suggested that the right to take water from the defendant's pond,

which the latter had created by erecting a dam across the stream above the plaintiffs' land, was a different thing from the right to take water from the stream. But this position is clearly untenable. The water does not cease to be a part of the stream by being kept from flowing by a dam. On this question of evidence it can not be assumed that the defendant had any right to detain the water. But it could make no difference if he had, so far as it regards the question whether the water in the pond was a part of the natural stream.

The case stripped of all extraneous matters, presents merely the ordinary question, whether the plaintiffs, who have alleged a general absolute right to the enjoyment of the stream of water, can prove a limited and qualified right. They allege a right to the natural and usual flow of the water, and their evidence tends to prove the right to have the water flow through " certain gates in the flume other than the saw-mill gate," when the saw-mill was not running. The plaintiffs' right to the water did not depend at all upon the point whether they had the right to enter upon the land and open the gates, or whether it was the duty of the defendant to open them. Their right to the water would be the same in one case as in the other, and the wrong done to them by being deprived of it by the defendants would be as great in one case as in the other. The plaintiffs have not brought their action for a violation of their privilege, if they have any, of opening the gates. They do not claim to recover for any deprivation of such a right. They sue because the defendant prevented the water to which they were entitled from flowing to their factory.

If *A* should deed to *B* a lot of growing timber, with the right to cut and carry it away, and after *B* had cut a part of it and left it to be removed, should prohibit him from removing it, and should claim the timber, it could not be seriously claimed that in an action of trover brought by *B* the deed would not be admissible as evidence of title to the timber, although it would also be evidence of a right to enter and cut it. It is not easy to see why in this case the deed should not be admissible to show a right to the water, as well as the deed in the case supposed to the timber.

Avon Manufacturing Co. *v.* Andrews.

It is too late to contend that a plaintiff can not allege a general right and prove an inferior special right, except in certain cases where special contracts or specific titles are alleged. Evidence is admissible which tends to prove what is averred, although it may prove less or more than what is averred. Even in actions of assumpsit, an allegation that the defendant promised, is sustained by proof that the defendant promised jointly with another. 1 Chitty's Pl., 46. So if a plaintiff, to a plea of infancy, replies that the goods sold the defendant were necessaries, he can prove that a part of them were. Id., 615. In actions of tort there is scarcely an exception to the rule that the plaintiff may prove less than he avers and recover. In assault and battery, however aggravated the case may be as stated in the declaration, proof of a mere assault is sufficient. In trespass and trover, proof of the taking or conversion of one article of a hundred specified, is sufficient. Even in ejectment, proof of ouster as to any part of the land described in the declaration is admissible. But it is needless to refer to any cases except those where the right to a flow of water was in issue. In *Burdick* v. *Glasko*, 18 Conn., 494, the plaintiff alleged that his land lay on the Pachaug river, and that he had the right to the free course of the water of the river, coming much nearer to a claim as riparian proprietor than the plaintiffs in this case do, yet the court allowed him to prove by an indenture a much more limited and qualified right than the case now before us presents.

In *Wier* v. *Covill*, 29 Conn., 197, the plaintiff, under an allegation " that he had a right to a flow of the water in great abundance and plenty," was permitted to show a right to a small flow of water.

Indeed we do not see how we can hold the evidence in this case inadmissible without directly overruling the case of *Twiss* v. *Baldwin*, 9 Conn., 291. The declaration in that case contained almost the same expressions as in this. The evidence of the plaintiff's right in that case as in this was a deed, which passed the right to convey the water by a race-way as in this case to a factory, with this addition, that the race-way was to run through the lot of another owner before it reached the

plaintiff's factory. The deed by implication granted the right to enter on the grantor's land and open the race-way if necessary. It was admitted that the right of the plaintiffs in the present case was in many respects qualified by the right of the defendant to use the stream above the race-way. The same objection substantially was raised in that case as in this, the point was fully discussed by Williams, J., and the court unanimously held the evidence admissible. It is impossible to distinguish that case in principle from this. The plaintiffs, as we have seen, did not offer to prove their right to open the gates as a basis of recovery, and claim nothing for the infringement of it. There is no reason to suppose that an infringement of this right was regarded by the jury as a basis of recovery or damages, for it must have been apparent that the evidence of it was brought into the case merely on account of its inseparable connection with proof that was admissible.

These, as we have said, are the only points necessary for our consideration, and on these we concur fully with the views taken by the judge on the circuit.

But the defendant complains of a part of the charge of the judge, which we agree with him is erroneous, but the error lays no foundation for granting to him a new trial. We deem it proper however to notice this part of the charge to prevent misapprehension hereafter. The defendant on the trial offered in evidence the record of proceedings in a former trial between the same parties, in which the present defendant was plaintiff, for the purpose of showing that by the verdict and judgment in that case, his right to the use of the stream as he claimed it had been conclusively determined in his favor. In the former case the present plaintiffs had, under the general issue, given notice of the same right which they now claim to establish, and that they had only exercised that right. The plaintiff in that case recovered; thereby, as the present defendant insisted, showing that the present plaintiffs' title was disallowed and that of the present defendant established. The learned judge did not sustain this claim; but having clearly and fully explained the general effect of verdicts and judgments, he went on to say:—" But there may have been another issue

presented by this record, arising out of the notice of the defendants. This notice contains an allegation that the Avon Manufacturing Company, and those under whom they claim a right to their cotton mill, have, for more than twenty years last past, been accustomed to have, and have had, the right to draw water from said pond as their convenience and necessity required. The plaintiff might have replied to this allegation in two ways. 1. He might have denied it. Then the issue would have been on the truth of the allegation. The defendants, upon tendering this issue alone, would admit the allegations in the declaration to be true, but might still claim that the plaintiff ought not to recover because all the defendants did was done by virtue of the right which they had set up. The plaintiff by denying this allegation would have admitted that if the allegation were true he had no right to recover. Or, 2nd, the plaintiff might have replied to the allegation in this notice, by saying that it is true that the defendants have the right thus set up by them, that is, the right to draw water from said pond as their convenience and necessity required, still the plaintiff is entitled to recover, because the defendants have exceeded their right so to draw the water, that is, that they have drawn more than their convenience and necessity required. If the issue in this part of the case was formed in the manner first stated, that is, by denying the allegations of the defendants, and the verdict of the jury had been for the defendants, the record would have been conclusive evidence that the defendants had the right set up in their notice. But if the verdict had been for the plaintiff, then the record would have been conclusive evidence that the defendants had no such right as they set up in their notice. If the issue was formed in the manner last stated, that is, by admitting the right claimed but alleging an excess, and the issue found for the plaintiff; the record would be conclusive evidence that the defendants had exceeded their right, but if found for the defendants, then it would be conclusive evidence that the defendants had not exceeded their right. Which of these issues was presented to the jury in the trial of that case is a question of fact for your determination."

We think this part of the charge was manifestly erroneous. The judge seems to have proceeded on the assumption that an issue in pleading may be formed partly in writing and partly by parol. But an issue is defined by Chitty, (1 Chitty Pl., 652,) to be " a single, certain and material point, issuing out of the allegations or pleadings of the plaintiff and defendant." It can not be formed by a mere parol denial by one party of an allegation of the other. A notice is a mere extension of the general issue. If the doctrine of the charge is correct, half a dozen issues can be made by a mere similiter.

As the issue must be formed by the pleadings in writing, the question of what issues are formed on the record is one for the court, and can not, as it was in this case, be left to the jury. It is not easy to see, if it could have been left to them, how it could be proved except by the former jurors themselves and without violating the sanctity of the jury-room, which could not be allowed. *Smith* v. *Sherwood,* 4 Conn., 276, 282. *Sintzenick* v. *Lucas,* 1 Esp., 43.

We think therefore that the charge on these points was erroneous, but, as the evidence was offered by the defendant, and the error operated or might have operated to his advantage, he is not entitled to a new trial.

In this opinion HINMAN, C. J., concurred.

BUTLER, J. In respect to the admissibility of the usage and deed I must dissent.

Upon streams which do not at all times, in their ordinary, natural and continuous flow, furnish a sufficient supply of water to carry a mill, a dam and pond are essential for the purpose of accumulating water during the night for use during the day. The necessary head and fall may be obtained by a dam, or by a canal leading to a descent; but usually, on streams of moderate and ordinary capacity, the dam and pond are necessary for both purposes. An early proprietor of the premises of both parties, built both the grist-mill and saw-mill, one above the other on the brook, and a single dam and pond for both. That the ordinary flow of water in

the brook was not sufficient for operating the grist-mill, and that the pond was relied on for both, is shown by the usage sought to be proved. That usage obviously originated in the necessity of using the accumulated water of the pond to operate the grist-mill, when the saw-mill was not running. If the capacity of the stream had been such that a sufficient supply of water to operate either or both mills, flowed constantly at all times in the stream, it would have kept the pond full, and flowed over the dam when the saw-mill gates were shut, and furnished a sufficient supply, at all times, to the grist-mill, and the usage could have had no existence. It is manifest therefore that the owners of the grist-mill relied upon the accumulation of water in the pond during the night, to furnish a supply to that mill during the day ; and that they drew from the pond *such accumulated water*, and in greater quantity than the natural flow of the stream during the day, by opening the gate for that purpose when the gate was not opened to operate the saw-mill ; and that practice or usage was confirmed as a right, and extended to the substitute factory, by the deed.

Now it was that special right to " take and draw " the water from the pond, even when there was a natural though insufficient flow over the dam and in the plantiffs' canal—*that easement in the accumulated water of the pond*—that right to an increased, unusual and regulated flow, to be exercised by entering upon the defendant's land and opening his gate—which the plaintiffs offered to prove by the usage and the deed ; and the question is, whether the plaintiffs could prove that special right under the averments of the declaration.

Those averments are doubtless adapted to any proof of an unlawful and unauthorized interruption of the natural flow of the stream. But the plaintiffs did not claim to prove any such unlawful interruption. They did not claim, and the usage and deed did not tend to prove, that the accumulation of the water in the pond of the defendant, until the natural flow of the stream continued over the dam, was not a reasonable and lawful act on the part of the defendant; nor did the usage and deed tend to prove that he did any thing more by way of interrupting the natural flow of the water in the stream,

Indeed it would have been inconsistent with the usage, a violation of the right confirmed by the deed, to have left the saw-mill gate open at all times, and during the night, and prevented any accumulation of the water during that time for use during the day. The plaintiffs' right was commensurate with the usage, and required the detention and accumulation of the water during the night so that they might draw it off in the day time in greater quantity than was afforded by the natural flow of the stream. The plaintiffs therefore offered the usage and deed to prove an easement in a pond of water lawfully accumulated and detained from its natural flow, for the reasonable operation of their mill; not the unlawful detention and accumulation alleged in the declaration; and the injury complained of on the trial, and which they sought to prove, was an interruption in their right to take the benefit of that lawful accumulation by virtue of the usage and deed, and because such enjoyment was necessary to the accustomed operation of their factory.

The case differs therefore essentially from *Twiss* v. *Baldwin.* In that case the injury proved consisted in an unreasonable, and therefore unlawful, detention of the water in the defendant's pond during the day time, and an unreasonable and unusual discharge of it during the night, whereby the plaintiff was interrupted in the enjoyment of such natural and lawful flow of the stream as he was entitled to have, and would have had if the water had been reasonably and lawfully used by the defendant. Here, there was no attempt to prove such unlawful detention for the unlawful purpose of letting it out again in the night when it could not be used, and thus deprive the plaintiff of the use of it, or for any unlawful purpose; but to prove a right to have such accumulation made, and an easement in the use of it when made, for the benefit of the grist-mill as well as saw-mill—a right to " take and draw " the water so lawfully accumulated and detained through the gate in a greater quantity than the natural flow of the water in the stream for operating and working their factory, and an interruption and injury to that special right not alleged in the declaration,

If the defendant should keep open his gates or break open his dam, and permit the plaintiffs to enjoy the right to the unobstructed natural flow of the water, which and which alone they set up in their declaration, it would destroy the special right to an increased, regulated and artificial flow effected by the dam and gates, which was evidenced by the usage and deed, and would render the plaintiffs' factory comparatively worthless.

Inasmuch therefore as I am of opinion that the evidence offered did not tend to prove the injury alleged in the declaration, and the plaintiffs have been permitted to prove and recover for a different injury, I think a new trial should be granted.

SANFORD J., also dissented. He understood the plaintiffs' claim as set up in their declaration to imply a denial of the defendant's right to interpose any obstacle to the natural flow of the water into the plaintiffs' race-way and to their mill, while they asserted in themselves the right to enjoy the use of the water thus flowing in its natural course without hindrance, and to enjoy this use without any act or effort of their own to obtain the water; and yet, by the evidence objected to, the defendant's right by means of his dam and gates to hinder and interrupt the natural flowing of the water, subject only to the plaintiffs' right, under certain specified circumstances, to open those gates, was conceded; the allegation thus being of a right to the enjoyment of the water flowing onward as it would flow if unobstructed, and the evidence being of a right to remove an obstacle lawfully interposed by the defendant on his own land, and make it flow. He thought therefore that the right proved was not a minor right of the same kind as, and included in, the right set up in the declaration as the ground of recovery, but one of an entirely different character, and therefore that the evidence ought to have been excluded.

New trial not advised.