## NELLIE M. GRAY *vs.* SACO WATER POWER COMPANY.

### Oxford. Opinion August 11, 1893.

#### *Waters. Deed. Diversion. Head.*

Water rights acquired by grant, and not by ownership of the soil through which the water flows, depend upon the intention of the parties as expressed in the deed taken in connection with their situation and the subject matter of their transaction at the time of the conveyance.

Under a deed of the right to use as much water out of a pond as would pass through a hole ten inches square, after conveying it to a convenient place to a water wheel erected there, the grantee made an opening through the dam of one hundred square inches, the lower part of which was three feet above the bottom of the dam. The water thus drawn from the dam was conducted by a canal to a water-wheel placed about on the same level as the bottom of the dam, thus obtaining a head of three feet after it left the dam. The defendant, having since acquired the grantor's rights, has during the past six years drawn. at various times for the use of its mills in Saco and Biddeford, the water in the pond down nearly to the top of the opening in the dam, but not so low that the water did not fill the entire aperture of one hundred square inches; and the plaintiff holding under the grantee above named, has been deprived at such times of the usual head of water in the pond theretofore enjoyed, and without which the mill cannot run.

*Held,* that the defendant's acts in diminishing the head of water at the dam are not a wrongful interference with the plaintiff's rights; *also,* that such deed does not call for any head at the dam.

AGREED STATEMENT.

This was an action for the diversion of water. The parties stated their case which appears in the opinion of the court.

*A. H. Walker*, for plaintiff.
*Fairfield and Moore*, for defendant.

VIRGIN, J. In 1783, there was erected across the outlet of Moose pond a dam ten feet in height over which the water usually flowed in spring and fall.

On August 1, 1832, and for fifty years at least prior thereto, Barnabas Bracket owned the pond, dam and mills thereon, together with the adjoining territory. The water thus raised,— except so much thereof as was temporarily used in the spring for slipping logs,—was exclusively used for running the mills.

On August 1, 1832, Bracket conveyed about one half acre of land, situated a short distance below the dam, to one Berry, the plaintiff's father, who erected thereon what is denominated in the next deed to be mentioned a "shop."

On October 23, 1839, Bracket conveyed to Berry a certain water right, viz: "The right of drawing as much water from Moose pond and through my dam as will vent off through a gate or opening that is equal to ten inches square, and to draw the same at any and all times, and to carry the water across my land situated between the dam and said Berry's shop, by canal or otherwise, and from the shop to Moose brook on the northerly side of the county road, for the purpose of venting the water off from his water wheel, or said Berry may at his election take the water out through the main dam and carry it down the brook, nearly to the bridge, by a flume or otherwise, and there erect a building twenty feet square for the convenience of his water-wheel. . . . Meaning to convey to said Berry the right of using as much water out of the pond as would pass through a hole ten inches square after conveying it to a convenient place to erect a water-wheel."

Under this deed, Berry made through the dam "an opening" of one hundred square inches, the lower part of which was three feet above the bottom of the dam. And the water thus drawn from the dam was conducted by a canal dug by Berry to his

wheel which was set about on the same level as the bottom of the dam, thus obtaining three feet head after it left the dam.

The Berry mill has ever since been run by the water thus drawn through the dam, until the alleged diversion in 1874, by the defendant.

In 1874, the defendant, through several mesne conveyances, acquired Bracket's entire interest in the premises,— including the pond, dam, mills and privileges,— since which time it has drawn water from the pond for the use of its mills in Saco and Biddeford. And in 1876, on the death of Berry, his interest descended to the plaintiff—his sole heir-at-law.

At various times within the six years next preceding the date of the writ, the defendant has, for the use of its mills in Saco and Biddeford, drawn the water in the pond down nearly to the top of the "opening" in the dam, but not so low that the water did not fill the entire aperture of one hundred square inches. Whereby the plaintiff, during the various times mentioned, has been deprived of the usual head of water in the pond theretofore enjoyed and without which her mill cannot run.

The question is : Are the foregoing acts of the defendant, in thus materially diminishing the head of water at the dam previously enjoyed by the plaintiff, a wrongful interference with her rights.

As the plaintiff and her predecessor acquired no right from being owners of soil through which the water flows, the grant is her sole source of right. *Tourtellot* v. *Phelps*, 4 Gray, 373. Hence the decision of the case depends upon the intention of Bracket and Berry, on October 23, 1839, taken in connection with their situation and the subject matter of their transaction at that time. *Sumner* v. *Williams*, 8 Mass. 162 ; *Deshon* v. *Porter*, 38 Maine, 293 ; *Covel* v. *Hart*, 56 Maine, 518, 522 ; *Butler* v. *Huse*, 63 Maine, 447, 453.

Grants and reservations relating to water and water power are various in their nature and effect. Some refer to a certain extent of water power sufficient for the propulsion of a specific mill or machinery. *Warner* v. *Cushman*, 82 Maine, 168 ; *Hammond* v. *Woodman*, 41 Maine, 177 ; *Covel* v. *Hart*,

*supra*; *Elliott* v. *Shepherd*, 25 Maine, 371. Some to a quantity of water to be restricted to a specific purpose. *Deshon* v. *Porter*, *supra*. Others to "such a quantity of water as the grantor or his predecessor have been accustomed to use." *Avon Manf'g Co.* v. *Andrews*, 30 Conn. 476. Still others, to such a quantity of water as will flow through a gate of specific dimensions under a specific head of water. *Bardwell* v. *Ames*, 22 Pick. 333 ; *Tourtellot* v. *Phelps*, *supra*. Head is a well-known material factor in determining the quantity of water which will pass through a given aperture in a given time. Em. Hydr. 38 ; *Canal Co.* v. *Hill*, 15 Wall. 94, 102.

Reading the deed of October 23, 1839, in connection with the situation of the parties and the subject matter of their transaction at the time of the conveyance, we find Brackett owned the entire water privilege — a pond some four to six miles long, the dam and mills thereon and the land about them. The dam built in 1783, had always remained ten feet high, over which the water usually flowed in spring and fall, and was exclusively used for the mills at the dam,— except temporarily in the spring when some of it was appropriated for slipping logs,— until 1874.

Such was the condition of the property, on October 23, 1839, when Bracket conveyed to Berry the right to draw about seven-tenths of a square foot of water from the dam. From what part of the dam is not specified — an option of two different places is given. It was in fact taken, not from the "main dam" and so "down the brook by a flume" to a building 20x20 to be thereafter erected "for the convenience of his water-wheel." But it seems it was taken from a part of the dam by a "canal the bottom of which at the pond was about three feet higher than the bottom of the [main] dam at its lowest point."

The deed in question makes no mention of any head whatever. The size of the "opening" only is given. Neither the dimensions of the Berry mill thereafter to be built, nor the kind, extent or purpose of the machinery to be attached thereto, and operated by this small quantity of water carried several

rods from the dam in a canal, is hinted at. Nothing is said about Berry's sharing the expense of keeping the dam in repair. Nor does the agreed statement shed any light upon these matters.

The last clause in the description of the premises—"Meaning to convey to said Berry the right of using as much water out of the pond as would pass through a hole ten inches square after conveying it to a convenient place to erect a water-wheel"—does not call for any head at the dam. The agreed statement shows that the wheel was placed three feet lower than the opening in the dam, whereby a head of three feet was secured in the Berry canal after the water left the dam.

Therefore, looking solely at the terms of the deed, it would seem that so long as the water in the dam is not drawn down so low but that it "at any and all times" fills the entire aperture whether situated at the dam as the first clause in the deed would seem to place it, or immediately in front of the wheel at the foot of the canal, as the last clause seems to locate it,—the grantee and his assigns have all the water he bargained for.

In the absence of any provision in the deed for any specific head of water in the pond, can it be construed into the deed by any known rule of law? We think it cannot.

It is, however, an established rule of construction, founded on the highest considerations of law and justice that the grant of a principal thing carries all things necessary to the use and enjoyment of the thing granted which the grantor has the power to convey. *Butler* v. *Huse*, 63 Maine, 447, 453. Thus the grant of mills carries also by implication the use of the head of water necessary to their enjoyment owned by the grantor. *Blake* v. *Clark*, 6 Maine, 436; *Rackley* v. *Sprague*, 17 Maine, 281; *Wyman* v. *Farrar*, 35 Maine, 70; and also the right to flow the land of the grantor. *Preble* v. *Reed*, 17 Maine, 169. And the grant of a "mill site" conveys also the water power; the right to maintain a dam for the beneficial appropriation of the water. *Stackpole* v. *Curtis*, 32 Maine, 383. So when the use of a thing is granted everything essential to that use is granted also. Such right carries with it the implied authority to do all that is necessary

to secure the enjoyment of such easement. *Pomfret* v. *Ricroft,* Wm's Saund. 323, note 6; *Prescott* v. *Williams,* 5 Met. 429; *Warren* v. *Blake,* 54 Maine, 276, 286. Thus Berry had the right to enter and clear out the canal and race-way on Bracket's land, through which the water granted necessarily flowed to and from Berry's wheel, whenever such action became necessary to the enjoyment of the use of the water granted. *Prescott* v. *White,* 21 Pick. 341; *Prescott* v. *Williams, supra.*

There can be no doubt that whatever was essential to the use of the one hundred square inches of water granted, was also granted. But that cannot include the right to compel Bracket, and his assigns to keep up any particular head of water above the plaintiff's tap in the dam. In *Canal Co* v. *Hill,* 15 Wall. 49, the Chesapeake and O. Can. Co. leased to the defendant the right to draw from their canal "so much water as would pass through an aperture of two hundred square inches to be used solely for propelling the machinery of a paper mill and appurtenant works — the lower edge of the aperture not to be nearer the bottom of the canal than two feet." A majority of the court held that the quantity of the water was to be ascertained from the character and depth of the canal, the circumstances under which the water was to be drawn, and the state of things existing at the time the grant was made. And that although no head of water was mentioned in the lease, it was presumed that the parties contracted in reference to such a head as depended upon the usual depth or height of water in the canal. But in that case the use to which the water leased was to be appropriated was specified in the lease. In the case at bar no such intimation is given.

To be sure, Berry and his assigns might enjoy so much head as resulted from the natural accumulations of the water in the pond and thus secure *pro hac* by velocity a larger quantity of water per minute or per hour than when the head was lower. But we do not think the company is bound to keep back the water in the pond for his use and for the sole purpose of feeding his canal. *Whitney* v. *Wheeler Cotton Mills,* 151 Mass. 396, 405. But so long as the water in the pond is kept sufficiently high to fill

the "opening" entirely, whatever the head, he enjoyed the thing granted, and whatever beneficial use belonged to it so far as any head is concerned. The fact that there was more or less head at the dam prior to 1874, is immaterial in the absence of any claim by adverse possession. That was no contemporaneous construction by the parties. Such fact simply resulted from the fact that the defendant's predecessors had no occasion by their comparatively small mills to draw down such a body of water, as the present defendants have. The deed is to be construed with reference to the state of the property at the time of conveyance.

*Plaintiff nonsuit.*

PETERS, C. J., WALTON, LIBBEY, FOSTER and HASKELL, JJ., concurred.