*June, 1810.*

DOOLITTLE
v.
BLAKESLEY.

---

OBED DOOLITTLE, jun. AND ROSETTA, HIS WIFE, *against*
ASA BLAKESLEY.

MOTION for a new trial.

This was an action of ejectment in right of the wife,

Where the grantor in a deed descri-
bed the pre-
mises as the farm on which he then dwelt, this was held to be a latent ambiguity, which
might be explained by evidence *aliunde.*

That a particular piece of land claimed to be within such description was, at the
time of the grant, in a state of nature, unenclosed, and separate from the rest of the
farm, and that the grantor afterwards remained in possession, and occupied it as his
own until his death, are circumstances admissible in evidence to show that such piece
of land was not within the grant.

Where there has been an adverse possession of more than fifteen years against two
tenants in common, one of whom is within the saving of the statute of limitations, the
right of the other is not thereby saved.

demanding the seisin of the fifth part of one undivided half of a certain lot of land situated in *Cheshire*, containing about nine acres.

The disseisin was alleged to have been about 1st *April*, 1808. The defendant pleaded the general issue.

On the trial said *Rosetta* claimed title to the premises as devisee under the will of *Moses Blakesley*, deceased. The facts which appeared were as follows: *Moses Blakesley*, father of the defendant, and of said *Rosetta*, on the 14th of *February*, 1776, was seised of the land described, and also of a tract of land with a dwelling-house thereon, lying directly south of the demanded premises, divided therefrom by a highway. On the same 14th of *February*, 1776, said *Moses* executed and delivered to his son *Asa*, the defendant, a deed of "one half of the farm on which he, said *Moses*, then dwelt, together with the one half of the old dwelling-house standing on said farm in *Wallingford*, in *Cheshire* parish, that is, in quantity and quality." This was the only description in the deed of the land conveyed. *Moses* continued in possession until *September* 23d, 1789, when he executed and delivered to *Lois*, wife of the defendant, a deed of the other half of said farm without metes and bounds, and of half the land described in the declaration; and continued in possession of the whole until his death, which happened in *March*, 1807.

A question arose as to the extent of the deed of *February*, 1776, from *Moses* to *Asa*, viz. whether it contained and conveyed the one half of the land described in the declaration; for if it did not, it was admitted that the plaintiffs were entitled to recover in right of the said *Rosetta*; and in order to show that it did not, and to explain what was meant by the term "home farm," as a latent ambiguity, the plaintiffs offered witnesses to prove that at the date of the deed of 1776, the land demanded was in a state of nature, uncultivated, unenclosed, and separated from said farm by a highway; that afterwards

said *Moses* possessed and improved it, and occupied the same to the time of his death; that the defendant, in repeated instances, even after the deed to said *Lois,* asked liberty of said *Moses* to cut wood and timber on the land in question; and that he gave it accordingly. To the admission of this evidence the defendant objected; but the court overruled the objection; and witnesses were admitted and examined to the above facts.

If, as before stated, no part of the land in question were contained in the deed from *Moses* the father to *Asa* the son, there was no question but that the plaintiffs were entitled to recover; but if a moiety was contained in that deed, then from the date thereof until *September,* 1789, when *Moses* conveyed the other moiety to *Lois* the wife of *Asa, Moses* and *Asa* were tenants in common; and upon the execution of the last deed, *Asa* and *Lois* became tenants in common of the whole of the described premises, and *Moses* became a stranger to the title. But *Moses* continued in possession till his death, a period of more than fifteen years afterwards: whether this possession was adverse or not, was a question of fact; and if adverse, a question of law arose. That *Lois's* moiety was protected from the statute of limitations by coverture was admitted by all: but whether *Asa's* part was also protected by the disability of his wife, was the question.

To this point the court gave it in charge to the jury, that even if they should find that the land in question was all conveyed by said deeds to the defendant and said *Lois* his wife, yet if they found that said *Moses* had been in possession for more than fifteen years after said deed to said *Lois,* and held adversely to the defendant, said *Moses* had gained a legal title against the defendant, and the defendant was not protected by means of the coverture of his wife, his co-tenant; and should they find the fact of adverse possession, they must find for the plaintiffs.

DOOLITTLE
v.
BLAKESLEY.

A verdict being found for the plaintiffs, the defendant moved for a new trial; which motion was reserved for the opinion of the nine judges.

*N. Smith* and *Staples*, in support of the motion.

1. The first question is, whether the evidence objected to by the defendant, and admitted by the court on the trial, to explain the deed of 1776, was proper. Here it may be well to observe, that we make no objection to so much of the evidence as went to show the local situation of the land, or its state of cultivation. But the evidence to which we object is, that the grantor continued in possession after his deed, and exercised acts of ownership over the land. Such evidence is inadmissible to show that the land was not conveyed by the deed. Facts which took place subsequent to the execution of an instrument cannot be proved in any case, for the purpose of giving it a construction. It is more especially absurd to admit the grantor's own acts as evidence of the extent of his grant. His grant was the same, whether he afterwards remained in possession or not. Further, if the grantor's remaining in possession is evidence as to part, it is as to the whole. It will follow, that the conduct of the grantor may be proved, not merely to explain, but to *defeat* his grant.

But *Moses Blakesley* in this case was tenant in common with his son *Asa*, until the giving of the deed to *Lois* in 1789. His continuance in possession, during this period, was consistent with the nature of his estate. No inference, therefore, could arise. It does not appear that *Asa* was excluded.

2. It is claimed by the defendant that though the land in question was conveyed by the deeds, yet the grantor regained a title by adverse possession subsequent to the' last deed. Our answer to this is, that he could not gain a title in this way, because *Lois*, the grantee in the deed of 1789, was, during the whole time, a *feme co-*

*vert,* and within the saving of the statute. Neither could he gain a title by adverse possession against *Asa* the husband; because he was tenant in common with his wife; and the saving of one co-tenant extends to the other. In *Eaton* v. *Sandford*, 2 *Day*, 523. it was decided that the rights of the husband were saved by the disability of the wife.

*Daggett,* contra.    The defendant seeks for a new trial in this case, on the ground of the admission of improper evidence, and the misdirection of the court to the jury.

1. As to the evidence.    The plaintiffs offered to prove an occupation of the premises, and certain other acts of the parties, to show the extent of the grant.  The grant being of one half of the grantor's " home farm," it is seen at once to be necessary to find out what was intended by the *home farm.*   Now, no testimony is better suited to this end than the repeated acts of the parties for a series of years.   For this purpose the proof was admitted.  The authorities, we apprehend, warrant the admission. *Adams* v. *Frothingham*, 3 *Mass. Rep.* 352.    *Doe,* d. *Freeland,* v. *Burt*, 1 *Term Rep.* 701. 703.   *Curzon et al.* v. *Lomax*, 5 *Esp.* 60. are all of that nature.    Nor is any rule of law opposed.   If the grant were *certain*, it would doubtless be incompetent for us to vary its operation; but where it is uncertain, reason and authorities agree in giving it a true construction by proof like that we offer.

2. Is the charge correct ?   This depends on this question, shall the disability of one *tenant in common* operate in favour of his companion who is *sui juris ?*   In the case of *joint tenants*, the title is one and indivisible.  All must join in a suit for the recovery of the possession.  When, therefore, the disabled person brings his action, he may recover, not only for himself, but for his co-tenants.   Not so in the case of tenants in common.   They

June, 1810.

DOOLITTLE
v.
BLAKESLEY.

cannot join at common law; their title is not one and indivisible. There seems, then, no reason that the disability spoken of should extend to any of the co-tenants. Nor are any authorities shown in proof of this doctrine.

3. At any rate, the decision of the case is right; for it appears that the jury decided the case on the ground that the grant did not give the defendant the land in question. Why, then, should the cause be again tried? Why, except that the jury might again give an opinion on a point already decided?

In reply to this last suggestion, the counsel for the defendant said, if the charge was wrong, he ought to have a new trial. A court will never speculate upon the influence that evidence which has been suffered to go to the jury, had upon their minds. 6 *Ves.* jun. 72. Neither can the inquiry be made what influence a *charge* had upon their minds. It would be impracticable as well as absurd. These motions come in place of bills of exceptions. Surely a party could not be deprived of his bill of exceptions to the direction of the court by showing that the jury disregarded it. If the court have erred in point of law, a new trial must be granted.

On a subsequent day in this term, while the court had the case under consideration, the counsel were directed to argue the question, whether there is any difference between joint tenants and tenants in common as to the right of entry of all being saved by a saving of the right of one?

*Staples.* The incidents of a tenancy in common, and a joint tenancy, are the same so far as relates to *possession.* Where the possessory rights of tenants in common are in question, all must join no less than joint tenants. Their possessory rights are the same. The consequences resulting from possession must be the same. 2 *Bl. Com.*

194. 3 *Cruise's Dig.* 410. 555. 14 *Vin. Abr.* 511, 512. pl. 1. 3. 5. *Fairclaim*, d. *Empson*, v. *Shackleton*, 2 *Bl. Rep.* 690. [SMITH, J. Is it the unity of *title*, or the unity of *possession*, that enables one to bring all in ?] It is not on the ground of title, but of possession, that the right of one to enter saves the right of all.

*Daggett*, contra. Several tenants in common are out of possession. One can enter, being within the saving of the statute. He must sue alone. The others cannot join. How, then, can they get in? But it would be otherwise with joint tenants. They must join; and if one has a right of entry, the title being an entire thing, the right is saved to all. The court cannot say that they shall not enter without depriving one of them of a right. The possession of one tenant in common is not the possession of the rest, so as to prevent the statute of limitations from operating against them. *Earl of Sussex* v. *Temple*, 1 *Ld. Raym.* 312. This decision is directly in point. It may be added, that there is no room for the application of the rule, that with tenants in common the possession of one is the possession of all, where all are out of possession.

BRAINERD, J. The first question is, whether the admission of the testimony to explain the extent of the deed of 1776 from *Moses* to *Asa* was proper?

The term "farm," as to extent, is indefinite and ambiguous. *A.* grants or devises a farm situated in a particular parish in a particular town. He may own divers farms, or divers tracts of land, in the same parish. Such a grant or devise would not be void for uncertainty. It would not be void merely because from the face of it, it could not be ascertained which farm was intended, or how many of the tracts were meant to be included in the term "farm." Here would be an ambiguity arising from facts not in the instrument, which,

when found to exist, may be removed by other evidence. If a writing be not void upon the face of it; and if, upon the face of it, the true meaning cannot be collected owing to some fact from without, recourse must be had to other, to extra evidence, to the knowledge of persons and witnesses acquainted with the character and description of the subject matter.

*A.* devises a farm by the description of his "home farm." What is meant by *home farm* must in many instances be collected from the knowledge of persons acquainted with the devisor's own understanding of his *home farm* at the time of making the devise. Whether a particular piece of land was or was not, in the mind of the devisor, a part of his *home farm*, must frequently be ascertained from proof other than what arises from the will itself. On this point I would more particularly refer to *Lord Cheney's Case*, 5 *Co.* 68. *Jones* v. *Newman*, 1 *Bl. Rep.* 60. *Doe*, d. *Freeland*, v. *Burt*, 1 *Term Rep.* 701. 703. *Curzon et al.* v. *Lomax*, 5 *Esp.* 60. *Adams* v. *Frothingham*, 3 *Mass. Rep.* 352. and conclude that the admission of the testimony was proper to remove a doubt or explain an ambiguity arising from facts not apparent on the face of the deed.

The other question is, whether the charge of the court to the jury was correct?

It is stated correctly, that one tenant in common may bring his action when he pleases; that he is not encumbered with his fellow tenant; but that joint tenants must join, and if one be under a legal disability, the whole and entire right is suspended and protected until its removal.

Tenants in common and joint tenants have one quality common to each—unity of possession. Hence it is said, that the possession of one is the possession of the other. And the position laid down in *Com. Dig.* tit. *Limitation,* 106. B. "That the possession of one joint tenant is the possession of the other, so as to prevent the statute of li-

June, 1810.

DOOLITTLE
v.
BLAKESLEY.

mitations," is not only true as it respects joint tenants, but also tenants in common; for in *Fairclaim* v. *Shackleton*, 5 *Burr.* 2607. it is stated by the counsel, that "both joint tenants and tenants in common have a joint possession; a joint occupation and management of the whole; that the possession of one is the possession of both." Lord *Mansfield,* in delivering the opinion of the court, does by no means impeach this doctrine; and, as between themselves, it is true as to both.  One tenant in common in possession is of course in possession for the others, and can never, by that possession, unless it be adverse, gain a title against them : it can never be adverse but by ouster—by some act amounting to a disavowal of the common tenancy, and a denial of entry.  At this point in tenancy in common the statute of limitations begins to run, and the tenant in common thus ousted, has his remedy grounded upon his own independent title. In joint tenancy there can be no denial of title; for there is a unity of title, and one joint tenant cannot acquire a title against his fellow tenant by adverse possession; for the title is joint, and neither can bring an action grounded on title against the other.

*A.* and *B.* are joint tenants.  *A.* is in possession, and suffers *C.* a stranger, to possess with him.  The rights of *B.* cannot be affected by the possession of the stranger; the title and possession of his joint tenant are his title and possession.  *B.* could bring no action on his own independent title against *C.*

In case of tenants in common, as before observed, the possession of one is the possession of the other as it respects themselves.  But as it respects strangers it is totally different.  One tenant in common, as it respects his fellow tenant, is always safe in the possession of his fellow tenant, unless ousted.  But when disseised, either by a fellow tenant, or a stranger, he has his remedy in his own right upon his own independent title ; and if he will not exercise this right within the 15 years, he must

June, 1810.   suffer the consequences of an adverse possession, and
              lose his estate.

CHURCH
v.                 I am therefore of opinion that the charge was cor-
LEAVEN-       rect.
WORTH.

          In this opinion the other judges severally concurred.

                                    New trial not to be granted.