## JAMES EVELETH *vs.* NATHANIEL WILSON.

In equity as well as in law, the rule is well established, that parol evidence is not to be received to contradict, add to, or alter, a written contract.

But parol evidence tending to prove matters extrinsic to the terms of a written contract, for the purpose of applying it to the subject to which it relates, does not come within this rule.

An ambiguity arising from too great generality of description may be removed by parol evidence, which applies it to a single point.

THIS was a bill in equity, brought to compel the specific performance of a contract, and was argued on bill, answer and proof, at the close of the *June* term, in 1837, by

*Kent* and *Washburn*, for the plaintiff, and by

*J. Appleton*, for the defendant.

The material facts in the case appear in the opinion of the Court, which was delivered at the *June* term, 1838, by

SHEPLEY J. — The bill sets forth, that on the thirteenth day of *June*, 1834, the plaintiff made a verbal contract with *Charles Emerson*, for the purchase of a lot of land in *Orono*, and that by his consent, he entered into the possession of the lot, and during the same year built a house thereon ; and that since it was built he has continued to occupy it ; that on the twenty-fifth day of *May*, of the following year, *Emerson* conveyed a tract of land, including the lot thus occupied, to the defendant ; and that on the same day, for the purpose of carrying into effect the bargain between *Emerson* and the plaintiff, the defendant agreed in writing with the plaintiff, upon certain terms stated in the contract, which is set forth, to convey the same lot to him by a deed of release.   The bill sets forth the bounds of the lot, alleges a performance on the part of the plaintiff, and a request for a deed, and a refusal to convey ; and prays for a specific performance.

The answer admits the written agreement ; admits, that he took a deed of *Emerson* of a tract of land including the premises ; that the plaintiff then occupied, the house by him built, and that he still does.   It denies all knowledge of any verbal contract between *Emerson* and the plaintiff, differing from the written contract between the plaintiff and defendant ; denies, that the bill correctly describes

the lot; that the defendant was informed, that there was a lot so marked and bounded, or that plaintiff claimed accordingly, until after a difference arose between them respecting it.    And while it denies, that the plaintiff performed his contract within the time stipulated, it professes an entire willingness to deed to the plaintiff agreeably to the written contract.    It alleges, that the lot agreed to be conveyed was the one third part of the lot conveyed to him by *Emerson*, being on the easterly end of said lot and including the plaintiff's house; and that on the second day of *January*, 1836, he made and executed, and on the fourth day of the same month tendered to the plaintiff, a deed so describing it, and that he has been at all times, and now is, ready so to convey.

By an amendment to the answer, the defendant alleges that he was ignorant of any survey of the lot; admits that he wrote a bond at the request of the plaintiff, obliging the plaintiff upon certain conditions never performed, to convey the lot to one *Freese*, and describing it as in the plaintiff's bill; and alleges that at the time he informed the plaintiff, that if there were differences between the boundaries as stated in the bond and in his contract, that he should not be bound by them.

The only description of the lot to be conveyed contained in the written contract between the parties is, that the defendant " agrees to give or cause to be given a quitclaim deed of the lot of land upon which the said *Eveleth* now lives."

It appears from the testimony taken in the case, that in the summer of 1834, *James H. Bennoch* run out a lot from *Emerson* to the plaintiff, which is described, and the boundaries of which agree in substance nearly with those set forth in the bill, and that plaintiff soon after built his house upon it.    In the cross examination of *Myrick Emerson*, the defendant puts the following question, " were or were not your brother *Charles Emerson's* intentions to divide the lot bought by him of *McRuer* and *Ricker*, and the same by him sold to me, into three lots, and did he not so divide it ?"    Answer, " yes ; that was his intention, and he did so divide it, *James H. Bennoch* run it out into three lots."

*Charles Emerson* says, " the lot that *Eveleth* occupied in *May*, A. D. 1835, was the lot run out by *Bennoch*."    There is much other testimony taken by the parties, but it·may be regarded as im-

properly in the case, and therefore not considered, or as imma-terial.

How are the bounds of the lot " upon which the said *Eveleth* now lives " to be ascertained ? The defendant insists, that parol evidence cannot be admitted for that purpose. The rule is fully admitted in equity, that parol evidence is not to be received to con-tradict, add to, or alter a written contract. But evidence tending to prove matters extrinsic to the terms of a written contract, for the purpose of applying it to the subject to which it relates, does not come within this rule. An ambiguity arising from too great generality of description may be removed by parol evidence, which applies it to a single object. 2 *Stark. Ev.* 558—9. In the case of *Doolittle* v. *Blakesly*, 4 *Day*, 265, the description in the deed was, " one half the farm on which the said *Moses* then dwelt, together with one half of the old dwellinghouse standing on said farm in *Wallingford* in *Cheshire* parish, that is, in quantity and quality." Parol evidence was held to have been legally admitted, that a tract of land separated from the farm only by a highway, was uncultivat-ed and uninclosed, and that the grantor possessed and occupied it after the grant, for the purpose of showing, that it was not convey-ed by that description.

Where there was a devise of " all that my *Briton Ferry* estate with all the manors," &c. it was proposed, for the purpose of show-ing what estates passed, to give in evidence stewards' account books, made by the stewards of the owners of the estates, " con-taining particulars thereof;" and that certain lands had gone by the name of the " *Briton Ferry* estate in the county of *Brecon*."

This evidence having been rejected, a bill of exceptions was taken, and a writ of error was brought before the House of Lords, and the question was finally sent to all the Judges, who decided, that the evidence was admissible, and that it ought to have been admitted. *Beach v. Earl of Jersey*, 3 *Barn. & Cres.* 870. These cases fully authorize the admission of the evidence before stated. And from it, one perceives, that the whole lot, which the defendant purchased, had before he purchased been run out and divided into three lots by *Bennoch;* that a lot on one end of the whole lot had been by the same person run out to the plaintiff; and that the plaintiff, according to the testimony of *Charles Emerson*, was in

actual occupation of " the lot run out by *Bennoch*," at the time the contract between these parties was made. The contract refers to *the lot* on which the plaintiff " now lives." Some definite lot must have been intended ; and there is no evidence in the case, by which the lot can be ascertained and the bounds established, but by recurring to these surveys of the lot, and to the possession of the plaintiff. And although there is no evidence in the case, that the defendant knew, when he made the contract, of the existence of these surveys ; yet the fair inference is, that he expected and contracted to convey a lot, the bounds of which were to be ascertained either by the possession of the plaintiff, or by some survey or boundaries thereafter to be discovered. There is proof of a survey and of a possession corresponding to it ; and such proof in the absence of all other, must be regarded as satisfactory evidence of the bounds of the lot intended to be conveyed.

There is nothing in the contract, or in the proof, authorizing the conclusion, that by a conveyance of one third part in quantity of the whole lot, there would be a performance of the contract. The deed tendered does not therefore make out a defence ; and there must be a decree for a specific performance.

This Court orders and decrees, that the defendant convey to the plaintiff, by quitclaim deed, the lot of land upon which the plaintiff lived on the twenty-fifth day of May, 1835, bounding the same as it was run out to him by *James H. Bennoch ;* and that he pay the costs of this suit.