KOCH *v.* BIRD.

1. REFORMATION OF INSTRUMENTS—DEEDS—MISTAKE IN ACREAGE.
   By an equally divided court, a decree based on conflicting tes-
   timony granting reformation of a land contract and deed as
   to amount of land and requiring defendant to refund a part
   of the purchase price equivalent to the shortage, is affirmed.
   MOORE, MCALVAY, BROOKE, and KUHN, JJ., dissenting.

2. SAME—FRAUD.
   One who leads another to believe and rely on his statements of
   facts, and to part with money or property, is liable for
   fraud, whether the representations were based on an honest
   mistake or not. Per STEERE, C. J., and STONE, OSTRANDER,
   and BIRD, JJ.

3. SAME.
   *Held*, also, that a deed describing premises as 110 acres, more
   or less, when, in fact, the description conveyed contained
   only 104½ acres represented a sufficient shortage to warrant
   relief. MOORE, MCALVAY, BROOKE, and KUHN, JJ., dissent-
   ing.

4. SAME.
   Per MOORE, MCALVAY, BROOKE, and KUHN, JJ., dissenting:
   Complainant, having obtained knowledge that the land cov-
   ered by the contract amounted to less than 110 acres, before
   accepting a deed of the premises, and having made no attempt
   to repudiate the contract, was not misled.

Appeal from Clinton; Searl, J. Submitted November
19, 1912. (Docket No. 78.) Decided April 8, 1913.

Bill by George E. Koch against C. Fred Bird and an-
other for reformation of a land contract and deed. From
a decree for complainant, defendants appeal. Affirmed.

*William M. Smith*, for appellants.

*Lyon & Moinet*, for appellee.

STONE, J. The bill of complaint in this cause was filed

to obtain the reformation and correction fo a certain contract and deed of real estate by reason of an alleged mutual mistake made by the complainant and the defendants relative to the quantity of land embraced in a certain farm purchased by the former from the latter, and to require the defendants to repay to complainant the amount of money represented by such deficiency.

The bill represents: That on or about the 15th day of September, 1910, complainant for the first time met the defendant C. Fred Bird, and negotiated with the defendants to purchase from them a certain farm in the township of Ovid, Clinton county (the defendant C. Fred Bird, representing himself and his wife, who were the owners of said farm as tenants by the entirety), and said farm was represented to said complainant by said defendant C. Fred Bird to contain 110 acres. That relying on said statement, after said defendants had offered to sell said farm to complainant for $85 per acre, and after said complainant had offered said defendants $80 per acre therefor, complainant and defendants, after some negotiations, agreed and settled upon a price of $82.50 per acre for said farm. That upon reaching said conclusion and agreement the complainant and another man present, in the presence of C. Fred Bird, made a computation upon the basis of $82.50 per acre for 110 acres, and reached the result of $9,075, and, after some bantering to reduce the amount to $9,000, the price was agreed upon at $9,075, and the parties, complainant and defendants, by appointment, met on the 16th day of September at the office of one Flynn, a justice of the peace of said county, at which time and place a contract of purchase was executed, acknowledged and delivered, each party taking a duplicate thereof, which contract stated a consideration of $9,075, which complainant agreed to pay as follows: Five hundred dollars on the signing of the contract, and the balance of said principal sum on or before March 15, 1911. The premises were described in said contract as follows:

" All the following described land situated in the township of Ovid, county of Clinton and State of Michigan, to wit:  All that part of the south half of section seven in township seven north of range one west in said State of Michigan, lying south of the right of way of the Detroit, Grand Haven & Milwaukee Railway, and west of the center line of the Sturgis drain as now located across said land, and containing 110 acres of land, more or less."

The amount of $500 was paid to the defendants according to the terms of said contract, and the complainant returned to the State of Ohio, where he was then residing, and made preparation to come to Michigan and take possession of said farm the following spring.  That on the 14th day of March, 1911, the parties, complainant and defendants, again met at the office of said justice of the peace, and a warranty deed was made, executed, and delivered by the defendants to said complainant, expressing the consideration to be $9,075, and describing the land in the same way it had been described in the contract aforesaid.  Whereupon complainant paid the remainder of the purchase price and entered into possession of said farm.

The bill alleges, distinctly, that during all this time both complainant and defendants understood and believed that said farm contained 110 acres of land, and that the same was sold at and for the price of $82.50 per acre.  The bill further alleges that some time after complainant began to reside upon the farm the question arose as to the number of acres it contained; that complainant caused the same to be measured with substantial accuracy, and ascertained that instead of containing 110 acres, as represented by said defendants, said farm contained only substantially $104\frac{1}{2}$ acres; that as a result thereof complainant paid said defendants $82.50 per acre for $5\frac{1}{2}$ acres of land, or substantially that amount, that he did not get.  And the bill prays for relief as first above stated.

The joint and several answer of the defendants admits the making of the sale and transfer of the property in so far as the written contract and deed are concerned, but denies that the defendants, or either of them, ever knew or

stated precisely how many acres there were in the farm; that said defendant C. Fred Bird stated to the said complainant that his deed called for 110 acres of land more or less; and that, if he sold the farm, he should sell it in the same way that he had purchased it, and the answer denies that there was any mutual mistake or fraud.

The record contains nearly 200 pages of testimony in the case, and the principal conflict is as to what took place in the conversations and negotiations between the parties leading up to the making of the written contract.

The circuit judge granted the relief prayed for in the bill, placing the shortage at five acres, which, at $82.50 per acre, made the amount decreed against the defendants $412.50, and decreed that the land contract and deed be corrected by striking out the words "more or less" following the description of said land. The defendants have appealed from said decree. It would not be profitable for us to here attempt to set out the testimony relating to this conflict between the parties. The same has been read and considered with care, and it may be said that we have reached the conclusion that though a sale by the acre was not specifically expressed, either in the contract or in the deed, yet that such was the understanding of the parties.

While the language stating the consideration in the contract and deed would, standing alone, be consistent with a sale in gross, yet, under the authorities, we are satisfied that in such a case as this, where the claim is that of a mutual mistake, it is not only competent but it is the duty of the court to look into the testimony as to all of the surrounding circumstances and conversations, leading up to the sale to ascertain and determine whether the sale was by the acre or in gross. While it is true that such prior negotiations become merged in the contract, and later in the deed, yet for the purpose of ascertaining whether there has been a mutual mistake a court of equity will inquire into the preliminary conduct and negotiations of the parties.

The trial judge filed a written opinion, in which he used the following language:

"It is claimed that, because the contract and deed contained the words 'more or less,' therefore Koch took his chances as to the shortage, and should be denied relief. While this might be so as to a slight shortage such as would be covered by difference in surveys amounting generally to but a fraction of an acre, it is not the rule where land is purchased by the acre at an agreed price and the shortage is of considerable amount, as it is here, as will be seen by a careful perusal of the following authorities: *Hodges* v. *Denny*, 86 Ala. 226 (5 South 492); *King* v. *Brown*, 54 Ind. 368; *Rathke* v. *Tyler*, 136 Iowa, 284 (111 N. W. 435); *Skinner* v. *Walker*, 98 Ky. 729 (34 S. W. 233); *Frenche* v. *Chancellor*, 51 N. J. Eq. 624 (27 Atl. 140, 40 Am. St. Rep. 548); *Cardinal* v. *Hadley*, 158 Mass. 352 [33 N. E. 575, 35 Am. St. Rep. 492]. It is further claimed that Koch waived his right to take advantage of it after full knowledge of the facts. If he ever had full knowledge before he paid his money and took the deed, which is doubtful, he had no knowledge until after he had bound himself by the contract, and changed his circumstances so that it would be inequitable for Bird to raise this defense. Whatever may have been the rule in this and other States in the early history of our jurisprudence, it is now well settled in Michigan, at least in cases of this kind, a man is chargeable with fraud, where by his statements of facts he leads another to rely on the same and part with his money or property, and the rule is the same where there is an honest mistake as when there is actual intent to defraud. So in any event here the defendants must make good the representation as to the acreage of this farm. *Holcomb* v. *Noble*, 69 Mich. 396 [37 N. W. 497]; *Aldrich* v. *Scribner*, 154 Mich. 23 [117 N. W. 581, 18 L. R. A. (N. S.) 379], and cases cited. Koch purchased this farm by the acre, and was led to believe that he was getting 110 acres, and the fact that he was shown the lines does not alter the case in any way. He is entitled to a decree reforming the contract and to be compensated for the shortage with interest. But inasmuch as there may be a chance for slight mistakes in the survey, and in order that no injustice shall be done the defendants, the court finds the shortage to be five acres only and therefore the amount upon (which) interest shall

be figured will be $412.50. Complainant will recover his costs to be taxed. A decree may be entered accordingly."

Not only is here a case where the circuit judge saw and heard the witnesses testify, but upon a review of the evidence we fully agree with him upon the facts and conclusions found by him. We are of opinion that there was a mutual mistake of fact in respect to the number of acres in the farm which pervaded the whole dealing, including the making of the deed, and that this mistake was to an essential and material element of the contract. In so far as the sale of real estate is concerned, we think that this is a new question in this State, and we have therefore the more carefully examined not only the authorities cited by the learned circuit judge but other authorities as well.

Among the cases cited by the circuit judge is that of *Rathke* v. *Tyler*, 136 Iowa, 284 (111 N. W. 435). That is a unanimous opinion of the supreme court of the State of Iowa, and is a well-reasoned case. The court in that case draws the distinction between a sale in gross and a sale by the acre, which distinction seems to run through all of the well-considered cases. And it is there pointed out that there is really no distinction between executory and executed contracts as to what will entitle to equitable relief. We quote from that opinion as follows:

" It will be noted that the description is followed by the words 'containing one hundred acres, more or less.' These words indicate a sale in gross, even though the price stated may be an exact multiple of the number of acres mentioned; but they do not indicate an engagement that the purchaser took the risk, *ipso facto*, of the quantity of the land conveyed. In connection with a quantitive recital in the deed, they are to be construed as indicating that the acreage mentioned is approximately the number of acres within the metes and bounds, or subdivision, name, number, or lot by which the tract of land conveyed is designated. The expression cannot enlarge the boundaries mentioned in the deed. *Poague* v. *Allen*, 26 Ky. [3 J. J. Marsh.] 421; *Brady* v. *Hennion*, 21 Super. Ct. (N. Y.) 528. Nor do they have reference to the state of the title. *Williamson* v. *Hall*, 62 Mo. 405. They indicate that all the land

within the boundaries defined by the deed is included, and in the absence of other evidence, unless the discrepancy is great, that the parties to the instrument take the risk as to quantity. In such a case the expression is to be regarded as descriptive merely, and not as of the essence of the contract.

"But, where the discrepancy between actual quantity and that estimated is very great, the doctrine seems to prevail that a court of chancery will relieve on the ground of mistake. *Nelson* v. *Matthews*, 12 Va. 164 (3 Am. Dec. 620); *Harrison* v. *Talbot*, 2 Dana (Ky.), 258. This is on the theory that the difference is relatively so great as in itself, in connection with other recitals in the deed, to import the probability of a mistake having been made by the parties. *Hill* v. *Buckley*, 17 Ves. Jr. 394; *Harrell* v. *Hill*, 19 Ark. 102 (68 Am. Dec. 202); *Couse* v. *Boyles*, 4 N. J. Eq. 212 (38 Am. Dec. 514); *Paine* v. *Upton*, 87 N. Y. 327 (41 Am. Rep. 371); *Smith* v. *Fly*, 24 Tex. 345 (76 Am. Dec. 109); *Pratt* v. *Bowman*, 37 W. Va. 715 (17 S. E. 210); *Bigham* v. *Madison*, 103 Tenn. 358 (52 S. W. 1074, 47 L. R. A. 267), and cases collected. The risk taken is of a reasonable excess or deficiency only. *Hosleton* v. *Dickinson*, 51 Iowa, 244 (1 N. W. 550).

"But where the sale is by the acre, the differences presumed to have been contemplated by the parties are only such as are due to the errors incident to measurements by different surveyors and the variation in the instruments used, and the words 'more or less' in the deed are treated as words of safety or precaution merely, and intended to cover but slight and unimportant inaccuracies. *Belknap* v. *Sealey*, 14 N. Y. 143 (67 Am. Dec. 120); *Hoffman* v. *Johnson*, 1 Bland (Md.), 103; *Triplett* v. *Allen*, 67 Va. 721 (21 Am. Rep. 320); *Oaks* v. *De Lancey*, 133 N. Y. 227 (30 N. E. 974, 28 Am. St. Rep. 628). And this rule has been applied to executory contracts of sale in gross. *Harrell* v. *Hill, supra; Hill* v. *Buckley, supra*. But in *Paine* v. *Upton*, 87 N. Y. 327 (41 Am. Rep. 371), it was held that there is no distinction between executed and executory contracts as to what will entitle to equitable relief. In a case where the difference is slight as compared with the whole number of acres, the courts, inasmuch as the parties have expressed themselves as being satisfied, whether the tract be more or less, will not aid either party. *Frenche* v. *Chancellor*, 51 N. J. Eq. 625 (27 Atl. 140, 40 Am. St. Rep. 548). In the last case there

was a difference of but 1.58 acres in a tract of 195.98 acres. The authorities are numerous and will be found collected in 20 Am. & Eng. Ency. of Law (2d Ed.), 873 *et seq.*, and 13 Cyc. 639. The result of their examination is that much depends on the circumstances of each particular case, though the decisions may be separated into two general classes treating of (1) sales by the acre and (2) sales in gross or by boundaries. Again, sales by the acre may be subdivided into (1) those wherein this is expressed in the conveyance, and (2) those wherein this was not so expressed, but such was the understanding of the parties. In both of these classes a court of equity will grant relief if it clearly appears that there is considerable excess or deficiency between the quantity actually conveyed and that named in the deed, even though this be followed by the words 'more or less.'

"Sales in gross or by boundary are divisible into three subclasses: Those strictly by the tract, with reference to negotiation or estimated quantity of acres; (2) those in which the quantity may be referred to in the contract, but this is only by way of description, and under such circumstances or in such manner as to show that the parties intended to risk all contingency as to quantity, however much the discrepancy might be; and (3) those in which it is reasonably probable, from the price stated, in connection with the value and the extent of the discrepancy, or from extraneous circumstances, such as locality, value, price, time, and the conduct and conversation of the parties that they did not intend to risk more than the usual rate of excess or deficiency in such cases, or than such as might reasonably be calculated on within the range of ordinary contingency. It is manifest that contracts within the first two subdivisions, in the absence of any proof of fraud, will not be interfered with by a court of equity, for the evident reason that the parties have intended to hazard the quantity regardless of the extent of any possible discrepancy. But under the third subdivision any unreasonable surplus or deficiency will entitle the injured party to equitable relief, unless in some way he has waived or forfeited this right to demand the same. The discrepancy in this case is not sufficient to bring it within this subdivision. The shortage was 6.49 acres in 100, and we have discovered no case declaring this so unreasonable as to justify relief. In *Yearly* v. *Morris' Adm'r*, 9 Ky. Law, 703 (6 S. W. 433), a description of 282 acres fell

short 20 acres, and the deficit was held insufficient, in the absence of proof that the sale was by the acre. While the words do not extend to a variation of one-half of the tract, as held in *Lee* v. *Hester*, 20 Ga. 588, or one-quarter, as decided in *Smith* v. *Fly*, 24 Tex. 345 (76 Am. Dec. 109), or to one-fifth, as declared in *Gentry* v. *Hamilton*, 38 N. C. 376, yet in a case like this it cannot well be said that the proportion may be greatly lowered below that in the last case, in view of the nature of the description, without impinging on what the parties may be assumed to have intended. It will be observed that one of the boundaries is the middle of 'Mosquito creek.' This may be assumed to have a sinuous course, as is usual with streams of like magnitude, and two of the boundary lines extend to the middle of that stream, with their length not designated. In view of the uncertainties involved in these boundaries, and the fact that the deed was copied from that conveying the land to defendant, we are not inclined to say that the deficiency alone is such as to warrant the inference of mistake or fraud in the execution of the deed.

"The evidence, however, was such as to warrant the conclusion that, though a sale by the acre was not expressed in the deed, such was the understanding of the parties. * * *

"Both supposed the acreage to be as represented, but were mutually mistaken. Precisely such a case was made out as brings it within the second subdivision of the first class mentioned, and under the rules laid down justify relief by a court of equity. The deficiency was substantial, not slight, and much greater than could have been contemplated as likely to arise from the incidental differences due to different measurements and instruments employed."

In addition to the authorities cited by the circuit judge, we add the following: *Paine* v. *Upton*, 87 N. Y. 327 (41 Am. Rep. 371); *Belknap* v. *Sealey*, 14 N. Y. 143 (67 Am. Dec. 120); *Gallup* v. *Bernd*, 132 N. Y. 370 (30 N. E. 743); *Nelson* v. *Carrington*, 18 Va. 332 (6 Am. Dec. 519); *M'Coun* v. *Delany*, 3 Bibb (Ky.), 46 (6 Am. Dec. 635); *Hodges* v. *Kowing*, 58 Conn. 12 (18 Atl. 979, 7 L. R. A. 87); *Bigham* v. *Madison*, 103 Tenn. 358 (52 S. W. 1074, 47 L. R. A. 267); *Newman* v. *Kay*, 57 W. Va. 98 (49 S. E. 926, 68 L. R. A. 908, 4 Am. & Eng. Ann. Cas.

39, and note); *Kitzman* v. *Carl*, 133 Iowa, 340 (110 N. W. 587, 12 Am. & Eng. Ann. Cas. 296, and note).

We wish to call especial attention to the leading case of *Paine* v. *Upton, supra.* In that case it appeared that upon an examination of the farm the plaintiff, who was the purchaser, asked the defendants how much land there was in the farm, and at what price they would sell it. They informed him that the farm contained 220 acres and upward, and that they had asked for the same $150 an acre, but would sell it for $33,000. At the same time they exhibited to the plaintiff a printed description, describing the farm by metes and bounds in three parcels; one parcel was described as containing 191.50 acres, more or less, another as containing 30 acres, more or less, and the third as containing 1 acre, making in the aggregate 222.50 acres. The plaintiff declined to purchase the farm at the price fixed by the defendants, but made a counter offer of $30,000, which the defendants declined. But on the 28th of February, 1872, the negotiation was concluded by an agreement for the sale of the farm to the plaintiff for the sum of $31,687, and written articles were entered into between the parties in which the farm was described in general terms as the homestead farm of the late James Upton on the lots named, "containing about 222 acres of land be the same more or less." The deed was to be executed April 2, 1872, and was executed and delivered on that date, at which time a mortgage was executed by the plaintiff as provided in the articles. The deed described the farm in three parcels, as in the printed description exhibited to the plaintiff.

The plaintiff on the purchase of the farm took possession, and at the hearing was in possession. About nine months after the deed was given plaintiff's suspicion was excited as to the accuracy of the representation of the quantity named by the defendants, and upon investigation he ascertained that the farm, instead of containing 220 acres and upward, contained only 206.35 acres, there being a deficiency in reference to the quantity which the

defendants represented it to contain of more than 13 acres, the value of which at the average price per acre paid for the farm, upon the assumption that it contained 220 acres, would be $1,953.93. The trial judge found that all the parties believed during the negotiation for the sale of the farm, and at the time of executing the contract and deed, and until about nine months after the making of the deed, that the farm did contain 220 acres of land and upward, and that such negotiation and agreement were had and executed on both sides upon the basis of such common belief and understanding, and that all the parties were mutually mistaken in the belief that the farm contained at least 220 acres. The precise question presented was whether upon the facts found the plaintiff was entitled to abatement from the bond and mortgage given for the purchase money, proportionate to the deficiency of acreage in the farm. Chief Justice Andrews, speaking for the entire court, in a very able and learned opinion, which is too lengthy to be copied here, held that the general jurisdiction of a court of equity to set aside or reform a contract on the ground of mutual mistake includes executed as well as executory contracts; that the consummation of the transaction, in ignorance of the mistake and without laches on the part of the party injured, gives the other party no immunity from making recompense, nor does it deprive the court of the power to remedy the injustice; that where the owner of the farm innocently, but untruly, states the quantity of the land contained therein, and a purchaser, in reliance upon the statement, enters into a contract and takes a deed, and subsequently discovers that the quantity is materially less than that stated, he is entitled to the interposition of a court of equity to correct the mistake. He further held that the purchaser in such a case is not deprived of his remedy by the addition of the words "more or less" to the statement of the quantity contained in the deed; that these words do not import a special agreement that the purchaser takes the risk of the quantity, nor are they equivalent to a stip-

ulation that the mistake, if one is subsequently discovered, shall not be ground for relief; and that, in the absence of any special facts and circumstances, the presumption is that in the sale of agricultural land for agricultural purposes the element of quantity enters into the transactions and affects the considerations agreed to be paid.

It seems to be held by the weight of authority that the measure of the compensation to be made for a deficiency in case of the sale of land by the acre, unattended with any particular circumstances, is the average value of the whole tract, without regard to the fact that the deficiency was in a certain quality of land. *Nelson* v. *Carrington, supra; M'Coun* v. *Delany, supra; Harrell* v. *Hill*, 19 Ark. 102 (68 Am. Dec. 202); *Nelson* v. *Matthews*, 12 Va. 164 (3 Am. Dec. 620).

In view of these authorities, we are constrained to hold that the circuit judge reached the right conclusion in this case, and the decree of the circuit court is affirmed, with costs to the complainant.

STEERE, C. J., and OSTRANDER and BIRD, JJ., concurred with STONE, J.

MOORE, J. (*dissenting*). I cannot agree with the conclusions of fact or law expressed by Justice STONE in his opinion. Before complainant had any considerable talk with Mr. Bird, he had been over the farm; he knew it was bounded on the east by an open ditch, on the north by a railroad, and upon the other sides by a highway. The parties do not agree about what was said about the acreage. It is clear Mr. Bird never had the farm surveyed, and it is not clearly shown that any one else had it surveyed with the desire to learn its accurate acreage until complainant had it done. The defendant testified, among other things, that he told complainant "that I bought it for 110 acres, more or less; and, if I sold it, I should sell it the same way." It further appears that, when they went to the scrivener to have the contract drawn, the deed given to

Mr. Bird was taken along and handed to the scrivener. A contract was drawn on the 16th of September, 1910, containing, among other things, the following:

"Witnesseth, that the said parties of the first part, in consideration of the sum of nine thousand seventy-five dollars to be to them duly paid as hereinafter specified, hereby agree to sell and convey to the said party of the second part, all the following described land, situated in the township of Ovid, county of Clinton, State of Michigan, to wit: All that part of the south half of section seven in township seven north of range one west in said State of Michigan, lying south of the right of way of the Detroit, Grand Haven & Milwaukee Railway and west of the center line of the Sturgis drain, as now located across said land, and containing one hundred and ten acres of land more or less. * * * It is also agreed by the parties hereto, that the said party of the second part, shall have possession of said land under this contract on the 20th day of March, 1911, or sooner if said deed is made. And it is agreed that the stipulations herein contained are to apply to and bind the heirs, executors and administrators and assigns of the respective parties hereto."

It is not claimed the scrivener misunderstood either of the parties in drawing this contract.

The complainant either read or heard read this contract, and, knowing what it contained, signed it. Later an abstract of title was furnished him. The first description in this abstract was the same as that contained in the contract, and the same as the one in the deed to Mr. Bird. One description in the abstract furnished complainant says:

"Conveys description abstracted 103¾ acres more or less."

Another description is:

"Conveys description abstracted 104 acres more or less."

The last one is:

"Grantor: Charles I. Sowle and wife Johnanna. Grantee: C. Fred Bird and Mary B. Date of instrument: Oct. 10, '07. Date of record: Oct. 12, '07. Liber 119;

page 422.   Instrument: W. D.   Description and remarks: Conveys description abstracted.   110 acres more or less."

While this abstract was in his possession, the complainant wrote defendant from Ohio under date of February 13, 1911, a letter containing this language:

" Another thing I could not understand is the number of acres.   In one transfer it is given 103¾ acres and another 104 acres, more or less, where the deed was made to you, was 110 acres more or less.   Do you know that the boundary lines were changed or the land measured to bring it up to 110 acres?   Of course actual measurement will show what it is."

Mr. Bird promptly replied to this letter.   Mr. Koch does not produce this letter, but testified in relation to it:

"*Q.* You may state what he wrote you in that letter; what did he write you?
"*A.* Why, he says, 'I told you that if you didn't want that farm, and if I hadn't bought, I would be very glad to keep it.'
" *The Court:* I didn't quite get that.
"*A.* He says, 'I told you that if you didn't want the farm, you didn't need to take it, and, if I hadn't bought yet, I would be very glad to keep it.'   He says, 'I would be tickled to death to keep it.'
"*Q.* Was that in the letter that he wrote in reply to that first letter?
"*A.* Yes, sir.
"*Q.* You say he says I told you; had he told you that before?
"*A.* No, sir; he never told me I didn't need to take it if I didn't want to.   No; that was the first I knew about it.
"*Q.* Do you know why he said in that letter that he told you that?
"*A.* No; I don't know.
"*Q.* Did he explain to you how the discrepancy arose in the recital of the descriptions upon the abstract?
"*A.* No, sir; not a word said about that."

The complainant said he attached no importance to what was contained in the letter, and accounts for its being mis-

laid in that way. Mr. Bird's recollection, as testified to, is that he replied that he did not know how the discrepancies came, and that, if the complainant did not want the farm according to the terms of the contract, he need not take it. On the 21st of February complainant replied to this letter; we quote:

"BRYAN, OHIO, February 21st, 1911.
" Mr. FRED BIRD :
" *Dear Sir:*
" Yours received and would say I believe you did not catch my meaning in regard to number of acres. I simply meant to ask whether there had been any measuring or change of lines to your knowledge that changed the amount on the several different transfers ? I didn't think for a minute you were trying to sell something you knew you didn't possess. I only wondered why it appears as it does. I have not owned the farm yet that I would not let go provided there was something in it. I would pay you well if you can send one of those parties that would give a long price if it is long enough or you can make $75 by furnishing me a buyer at ten dollars more per acre for the 110 acres, more or less, provided it was done inside of a week."

No further correspondence was had. The complainant gave no indication that he did not want the farm according to the terms of the contract. He came on from Ohio, and on the 14th of March, 1911, a warranty deed of the farm was made to complainant, in which the description was precisely the same as contained in the contract. He paid for the farm and was put in possession. This bill of complaint was filed August 31, 1911.

I think the contract, the letters, the warranty deed, and the conduct of the complainant are utterly inconsistent with the idea that he was buying a farm guaranteed to contain 110 acres at the price of $82.50 an acre, and is entirely in harmony with the claim of defendant that he was selling a farm for $9,075, which he bought as being a farm having certain metes and bounds, and described in the deed to him as containing 110 acres, more or less. Whatever may be the law in other States, I think it is

clearly settled in this State in relation to cases like the instant one.

In the early case of *Martin* v. *Hamlin*, 18 Mich. 354 (100 Am. Dec. 181), a similar question was involved. I quote from the opinion by Justice CHRISTIANCY:

"The agreement set up in the bill in reference to a guaranty of the quantity of land, a survey of the premises, and an indorsement to be made on the mortgage for any deficiency, was, if any such existed, wholly verbal. Whether such verbal agreement was ever made, is a question upon which the evidence is conflicting, and much of it directly contradictory, leaving the question open to considerable doubt. But, without going at all into the question of the weight of the evidence, we propose to consider the case in the most favorable aspect to the complainant which the testimony on his own part will warrant.

" The case as presented by the evidence on the part of the complainant, including his own, is substantially this:

" The defendant was residing on the farm at the time of the sale, and had resided there for some 25 years. Complainant and his father, who aided him in the negotiation, had also been acquainted with the premises for many years. There is no pretense on the part of complainant that the actual boundaries of the land were not known by, and visible to, all the parties. But the defendant had never had it surveyed. At the time of the verbal arrangement for the sale, two or three days before the papers were executed, the defendant represented the land as containing 110 acres, and said he would warrant it to contain that quantity; and complainant thereupon verbally agreed to purchase the farm and pay $4,200 for it, if there should be that amount of land. This verbal arrangement was made at the defendant's house on the premises; and the parties were to go in a day or two after to Pontiac, and have the writings drawn. They met at Pontiac accordingly for that purpose. Mr. Carhart, a justice of the peace, was employed at the suggestion of the defendant to draw the papers, a deed from defendant to complainant, and notes and a mortgage upon the land for part of the purchase money, and an assignment by the complainant to the defendant of another mortgage received as part of the purchase money.

"Immediately before the papers were drawn, as the
174 MICH.—89.

parties were going up unto Carhart's office for the purpose, on or at the foot of the stairs, a conversation was had between the parties in which it was verbally agreed that complainant should or might get the land surveyed by the county surveyor, and if it fell short (of 110 acres), an amount proportioned to such deficiency should be indorsed on the first payment, to be secured by the mortgage complainant was to give for $1,500 of the purchase money. If the land should overrun, complainant was to pay for the excess at the same rate, though it is not stated how or when. The parties then went into the office, and while Carhart was drawing the deed of the farm, the defendant wished him to insert the words 'more or less' after the words at the close of the description, 'containing one hundred and ten acres.' But to this, complainant's father, acting on his behalf (though he was himself present), objected; because they did not know, as he says, how much land there was, and they were to have it surveyed, or, as stated by the father in his testimony, 'because the complainant had nothing but the defendant's word for the amount of land, but expected one hundred and ten acres.' The verbal agreement was not stated to the justice, or in his presence. The deed was drawn without the words 'more or less,' and the complainant executed his three promissory notes for $500 each, and a mortgage upon the farm to the defendant securing the notes; having paid him in cash and by the assignment of a mortgage the balance of the $4,200. Complainant says he delivered his mortgage and notes, relying upon the understanding above stated. The papers were exchanged. Complainant received the deed, and went into possession. No written agreement was executed or seems to have been contemplated by either of the parties as to the survey or the indorsement of any deficiency.

"Upon survey, made some months after by the county surveyor, the farm was found to contain but $93\frac{1}{2}$ acres; and the defendant, being called upon to indorse the deficiency, refused.

"From this statement it is clear:

"(1) That the verbal agreement, if made as claimed by the complainant, constituted, while the matter remained in parol, a part of the terms of the entire contract of purchase and sale.

"(2) That the papers drawn by Carhart, and executed by the parties, together with the payment of a part of the

purchase money, were intended and understood by both parties as the consummation of the sale by the one, and the purchase by the other.

"(3) That the omission to insert in the deed or mortgage, or a separate instrument, any stipulation with reference to a survey to be had of the land, or the allowance or indorsement for deficiency, was not the result of any mistake of fact or of inadvertence from the subject not occurring to the mind of the complainant; but that the subject of such survey and deficiency was present to his mind during the drawing of the papers, and that the deed was drawn without the words 'more or less,' with the idea that it would operate as a guaranty of the quantity. That the parties knew the contents of all the papers executed, that all were executed and exchanged without any oversight or mistake of fact, in the very form intended by all the parties, and that they contained all that the parties intended should be contained in any written evidence of the transaction between them.

"It is not denied that, upon the face of the papers executed, and according to their legal effect, the complainant took the farm at his own risk as to quantity. *Roat* v. *Puff*, 3 Barb. [N. Y.] 353, and cases there cited. If, in accepting the deed and exchanging papers, he did not intentionally abandon all claim of compensation for deficiency, he must have relied either, *first*, upon the quantity mentioned in the deed as a guaranty; or, *second*, wholly upon the contemporaneous verbal agreement; or, *third*, upon both together.

"If he relied upon the first, it was a mistake of the legal effect of the instrument, the contents of which he knew—purely a mistake of the law. This is no ground for relief. See *Irnham* v. *Child*, 1 Bro. C. C. 92; *Townsend* v. *Stangroom*, 6 Ves. 328, 332; *Worrall* v. *Jacob*, 3 Meriv. 267, 271; *Hunt* v. *Rousmaniere*, 1 Pet. [U. S.] 1; *Id.*, 2 Mason [U. S.], 366 [Fed. Cas. No. 6,898]; *Gilbert* v. *Gilbert*, 9 Barb. [N. Y.] 532; *Arthur* v. *Arthur*, 10 Barb. [N. Y.] 9; *Farley* v. *Bryant*, 32 Me. 474; *Mellish* v. *Robertson*, 25 Vt. 603.

"He can have no relief upon the ground of the verbal agreement alone, or in connection with the deed; because, *first*, to say nothing of the statute of frauds, it was a part of an entire contract for the sale of the land, made immediately preceding, and contemporaneous with the deed and other papers executed in consummation of the sale,

and related to its very terms. It was, therefore, merged in or cut off by the deed and other writings by which the sale was consummated, and which must, in the absence of fraud, be presumed to contain all the terms finally agreed upon. *Street* v. *Dow*, Har. Ch. [Mich.] 429; *Stevens* v. *Cooper*, 1 Johns. Ch. [N. Y.] 429 [7 Am. Dec. 499]; Stark, Ev. 660–665; 1 Greenl. Ev. § 275; Cowen and Hill's Notes to Phill. Ev., note 948; and see especially *Broughton* v. *Coffer*, 59 Va. 184.

" (2) Because the parol agreement would tend to contradict and vary the notes and mortgage given by complainant at the same time as a part of the same transaction. *Jones* v. *Phelps*, 5 Mich. 222; *Adair* v. *Adair*, 5 Mich. 204 [71 Am. Dec. 779]; *Stevens* v. *Cooper, ubi supra; Cook* v. *Combs*, 39 N. H. 593 [75 Am. Dec. 241]; *Oelricks* v. *Ford*, 23 How. (U. S.) 49; *Crosier* v. *Acer*, 7 Paige [N. Y.], 141; *Austin* v. *Sawyer*, 9 Cow. [N. Y.] 39, 49; *Dix* v. *Otis*, 5 Pick. [Mass.] 38; *Powell* v. *Edmunds*, 12 East, 6; *Noble* v. *Bosworth*, 19 Pick. [Mass.] 314; *Conner* v. *Coffin*, 22 N. H. 542–4; *Gregory* v. *Hart*, 7 Wis. 532; *Hoyt* v. *French*, 24 N. H. 199; *Lang* v. *Johnson*, 24 N. H. 302; *Hoxie* v. *Hodges*, 1 Or. 251; *Underwood* v. *Simonds*, 12 Metc. [Mass.] 278; *Adams* v. *Wilson*, 12 Metc. [Mass.] 138 [45 Am. Dec. 240]; *Richardson* v. *Comstock*, 21 Ark. 69; *Oskaloosa College* v. *Stafford*, 14 Iowa, 152; Parsons on Bills and Notes, 501, 503.

" And this rule applies as well in equity as at law. *Wesley* v. *Thomas*, 6 Har. & J. [Md.] 24; *Chetwood* v. *Brittan*, 2 N. J. Eq. 439; *King* v. *Baldwin*, 2 Johns. Ch. [N. Y.] 557, 558; *Eveleth* v. *Wilson*, 15 Me. 109; *Richardson* v. *Thomas*, 1 Humph. [Tenn.] 154."

See, also, *Ortmann* v. *Bank*, 39 Mich. 518; *Reynolds* v. *Campbell*, 45 Mich. 529 (8 N. W. 581); *Nichols, Shepard & Co.* v. *Crandall*, 77 Mich. 401 (43 N. W. 875, 6 L. R. A. 412); *Phelps* v. *Abbott*, 114 Mich. 88 (72 N. W. 3).

I think the decree of the court below should be reversed, and the bill of complaint dismissed, with costs of both courts to defendants.

MCALVAY, BROOKE, and KUHN, JJ., concurred with MOORE, J.