The **DETROIT EDISON COMPANY**, a New York corporation, Plaintiff,

v.

Edward C. **MALBURG** and Mary Malburg, Defendants.

Civ. A. No. 14824.

United States District Court
E. D. Michigan, S. D.

Jan. 11, 1957.

Harvey A. Fischer, Leon R. Jones, Fischer, Sprague, Franklin & Ford, Detroit, Mich., for plaintiff.

Raymond R. Cashen, LaBarge, Kramer, Hudnut & Cashen, Roseville, Mich., for defendants.

LEVIN, District Judge.

This is an action for specific performance of a contract which gave the plaintiff an option to purchase a certain parcel of land from the defendants. The defendants allege either mutual mistake of fact, or mistake by the defendants coupled with unconscionable conduct by the plaintiff, and filed a cross complaint seeking rescission or reformation of the contract.

■ I am satisfied that there is no evidence that the plaintiff's conduct was fraudulent or unconscionable. I take the view, however, that the parties made a mutual mistake. The facts are briefly as follows:

On March 14, 1955, the defendants, Edward C. Malburg and his wife, Mary Malburg, for a consideration of $1,000, executed a contract, giving plaintiff an option to purchase a portion of defendants' farm. The contract described the land as

"The westerly 330 feet of the northeast quarter of Section 2, Warren Charter Township, Macomb County, Michigan, containing 20 acres of land more or less,"

and called for "the total purchase price of $75,000.00."

After the contract was executed the defendants learned that the westerly 330 feet of their quarter section contained 23.975 acres because their quarter section, from north to south, was over 500 feet longer than the standard quarter. The defendants refused to deliver a deed conforming to the contract although the plaintiff gave a timely notice of exercise of the option and made a timely tender of the purchase price.

■ Under Michigan law, the trial court has a duty to accept parol evidence to determine whether there was mutual mistake or unconscionable conduct. In Koch v. Bird, 1913, 174 Mich. 594, 140 N.W. 919, a land purchaser alleged that

a deficiency in acreage was due to mutual mistake. The court stated:

"While the language stating the consideration in the contract and deed would standing alone be consistent with a sale in gross, yet, under the authorities, we are satisfied that in such a case as this, where the claim is that of a mutual mistake, it is not only competent but it is the duty of the court to look into the testimony as to all of the surrounding circumstances and conversations leading up to the sale to ascertain and determine whether the sale was by the acre or in gross." Ibid., 174 Mich. at page 597, 140 N.W. at page 920.

Cf. Harris v. Axline, 1949, 323 Mich. 585, 36 N.W.2d 154, where parol evidence was admitted as to mutual mistake in the area of land sold. See also Retan v. Clark, 1922, 220 Mich. 493, 190 N.W. 244, admitting parol evidence of a party's inequitable conduct where the other party made a mistake.

■ The court has weighed the evidence in this case in accordance with the Michigan rule that evidence of a mistake or unconscionable conduct must be clear and convincing. Holda v. Glick, 1945, 312 Mich. 394, 20 N.W.2d 248.

The plaintiff contends that there was no mistake because the parties intended a sale by the tract, taking their risks on the amount of acreage involved. The evidence is clearly to the contrary.

The Detroit Edison Company wanted a parcel of the Malburgs' land for part of a high voltage power line corridor. Detroit Edison's agent, Roy Annet, Inc., sent one of its real estate experts, Rolfe H. Smith, to negotiate with Edward Malburg for the land. The negotiations took place during six visits in the winter of 1955. The prices discussed were always in terms of price per acre. On Smith's first visit he told Edward Malburg that he wanted to buy "the westerly 20 acres of his farm." Malburg asked for $4,000 per acre and Smith said it could not be sold for $2,000 per acre. On subsequent visits, per acre prices between $2,500 and $3,000 were mentioned. Agreement was finally reached when Smith offered the Malburgs the same price he gave the Malburgs' neighbor for 20 acres. The neighbor's price was $3,750 per acre, or a total of $75,000.

Further evidence of an intended acreage sale is the fact that Smith never referred to the parcel as "330 feet" until his third visit with the Malburgs. Smith did not know that the Malburg quarter was not a standard one and he did know that a 330 foot strip of a standard quarter constitutes 20 acres.

■ The plaintiff contends, nevertheless, that just before the contract was signed the parties inserted the phrase "more or less" in order to assume the risk of overage or deficiency. Customarily this phrase is used to account for possible differences in measurement by different surveyors. See Koch v. Bird, supra. There is no evidence that the parties here intended to deviate from the ordinary usage of "more or less" in Michigan land sales.

■ There is also no evidence that the Malburgs knew that the westerly 330 feet contained more than 20 acres. It is true that Edward Malburg knew that the entire farm was oversize. The court cannot take judicial notice, however, that farmers are such experts in judging land area that they will always detect a 20% excess in a contiguous, unmarked and partially wooded one-fourth of a quarter section. Indeed, this parcel was so irregular that even the plaintiff's surveyor was astonished to learn that it was oversize. He testified that he "almost dropped dead" when he learned the measurements and refused to believe them to be accurate until his crew resurveyed the property.

■ The court finds, therefore, that an acreage sale was intended and that all parties were mutually mistaken as to the number of acres involved.

■ Where an acreage sale was intended, but the parties erred as to the number of acres involved, the court must

grant relief from the contract as written. In Koch v. Bird, supra, the buyer of land sought reformation of a contract and deed, and repayment of part of the purchase price because of a deficiency in acreage. The land was described by metes and bounds, and as "containing 110 acres of land, more or less." The land, in fact, contained only 104½ acres. The court found that an acreage sale was intended and that a mutual mistake had been made. It therefore ordered a *pro tanto* return of the purchase price. It is significant that the error there was only 5%, whereas the error in this case is 20%.

Similarly, in Detroit Lumber Co. v. Arbitter, 1930, 252 Mich. 99, 233 N.W. 179, the court reformed a deed pursuant to an acreage sale where the land contained 10½% fewer acres than the deed described. This deed also used the phrase "more or less." See, also, Browne v. Briggs Commercial & Development Co., 1935, 271 Mich. 191, 259 N.W. 886. The court holds, therefore, that the mutual mistake entitles the defendants to relief.

■ The court further holds that the appropriate relief in this case is rescission of the contract. The court cannot grant reformation because it cannot ascertain what the parties would have intended had they not been mistaken. In Brenner Co. v. Brooker Engineering Co., 1942, 301 Mich. 719, 4 N.W.2d 71, reformation of a contract for reimbursement was denied where the parties based the contract on a schedule of expenses which was inaccurate. The court felt it could not add another item of insurance expense to the schedule because there was no evidence of how the parties would have acted if they had known of this expense in advance. The court stated:

"There is no showing in this record that the minds of parties met on the question of additional insurance premiums. On the contrary, the evidence shows that the parties never contemplated that there would be an additional insurance premium liability." Ibid, 301 Mich. at page 723, 4 N.W.2d at page 73.

The court also quoted with approval from DeVoin v. DeVoin, 1890, 76 Wis. 66, 44 N.W. 839, a case where a partnership buy-and-sell agreement was based on understatement of liabilities.

The Michigan court adopted this language from the case:

"The alleged mistake in the written agreement is not that the instrument does not express the terms of the contract just as the parties directed it to be written, but that there was a mistake in one subject-matter of the contract, to-wit, the amount of the firm liabilities, but for which mistake no contract would have been made, or, if made, its terms would have been different. Hence, conceding the mistake to have been mutual, it is not perceived how an action to reform the instrument can be maintained. If a promise by defendant to repay the $500 cannot be proved, we strongly incline to the opinion that, whether the mistake was or was not mutual, the only remedy of plaintiff was promptly to rescind the contract, or institute appropriate proceedings to that end." Brenner Co. v. Brooker Engineering Co., 301 Mich. 719, 725, 4 N.W.2d 71, 73.

A judgment will therefore be entered which will provide that the contract between the plaintiff and the defendants, dated March 14, 1955, be rescinded upon the defendants' payment to the plaintiff of $1,000, the consideration for the option.