## DETROIT LUMBER CO. *v*. ARBITTER.

1. REFORMATION OF INSTRUMENTS—DEEDS—CONSTRUCTION—INTENT.
    Intent of grandmother to give each of three grandsons equal share of tract of land, *held*, clearly deducible from terms of several grants.

2. SAME—MISTAKE IN ACREAGE.
    Where tract of land supposed to contain 7¼ acres was sold at certain price per acre and paid for accordingly, grantee was properly decreed entitled to corresponding reduction of purchase price on its appearing that tract contained only about 6½ acres.

3. SAME—PLATS—VACATION OF PART—CLOUD ON TITLE.
    Where recorded plat of land invaded rights of adjoining owner, latter is entitled to have plat vacated, so far as it effects said result, and have its title cleared.

4. TAXATION—SPECIAL ASSESSMENTS—INJUNCTION.

Where city through error constructed sewer on private land instead of in public alley, its action was illegal, and it was properly restrained from collecting unpaid sewer tax.

5. SAME—RIGHT TO RECOVER VOLUNTARY PAYMENT MADE WITHOUT NOTICE OF ILLEGALITY.

Landowner having neither actual nor constructive notice that sewer tax was illegal, and who paid installment due when confronted with lien on land, is entitled to repayment thereof, since it was equivalent to payment under compulsion.

6. REFORMATION OF INSTRUMENTS—DEEDS—DESCRIPTION—INTENT.

Where it appeared that grantor conveying parcel of land to three grantees by separate deeds intended to convey to each grantee equal share, but was mistaken as to actual acreage in said parcel, reformation of description in each deed to conform to said intent and to actual measurement in parcel was properly decreed.

Appeal from Wayne; Murphy (Alfred J.), J. Submitted June 13, 1930. (Docket No. 18, Calendar No. 34,916.) Decided December 2, 1930. Rehearing denied January 23, 1931.

Bill by Detroit Lumber Company, a Michigan corporation, against John Arbitter and others for reformation of deed and plat, cancellation of sewer tax, and accounting. Cross-bills by John Arbitter and others. From decree for plaintiff, defendants appeal. Affirmed.

*Milburn & Semmes,* for plaintiff.

*Fox & Severance,* for defendants Arbitters.

*Walter Barlow* (*Clarence E. Wilcox,* of counsel), for defendant City of Detroit.

*John J. Danhof* (*Harold H. McLean,* of counsel), for defendant Michigan Central Railroad Company.

CLARK, J. From decree entered in accordance with the following opinion of the trial judge, defendants John Arbitter and Lydia Arbitter and the city of Detroit prosecute appeal:

"On February 26, 1894, Jane K. Norris Joy held the title in fee simple to the following land then situated in the village of Norris in this county, and subsequently incorporated within the limits of the city of Detroit:

" 'All that part of the east ½ of the southwest ¼ of section 9 of township 1 S., R. 12 east, that is situate south of the center of the boulevard (now known as Davison avenue) and east of the right-of-way of the Detroit & Bay City Railroad, containing about 21¾ acres of land more or less.

" 'Said parcel of land is and was bounded on the north by the center line of the boulevard (now known as Davison avenue); on the east by the center line of Ennis avenue (now known as Sherwood avenue); on the south by the center line of the Six Mile road and on the west by the right-of-way of the Detroit & Bay City Railroad.'

"Upon the day mentioned she executed three deeds by which this land was partitioned and conveyed in three parcels of practically equal content of land. These conveyances ran severally to each of three grandchildren. The easterly third of the tract thus partitioned, and referred to herein as parcel one, was conveyed to William R. Newkirk, Jr. The westerly third of the tract was deeded to Stanley L. Newkirk and is referred to in this controversy as parcel two. The middle section, referred to herein as parcel three, was then deeded to Howard N. Newkirk.

"The intent of the grantor to give each of her grandchildren an equal share in this tract of land is clearly deducible from the terms of the several grants. Thus the deed running to her grandson, William, describes the land conveyed to him as 'a strip of land consisting of the easterly one-third' of the entire tract. In the instrument given to her grandson, Stanley, the property conveyed is de-

scribed as 'a strip of land consisting of the west one-third' of the entire tract. The parcel conveyed to the grandson, Howard, recites that the land conveyed is 'a strip of land consisting of the central one-third' of the whole tract.

"There is, however, this discrepancy in the three conveyances. Parcel number one is described as having a frontage of 213 feet on the boulevard. The frontage of parcels two and three is given in each deed as 211 feet. This is of such minor importance as in no way to negative the clearly expressed purpose to create three parcels of like size, for it must be remembered that at the time of the conveyances this was farm land. The difference of two feet frontage upon the boulevard in parcel number one may have been occasioned by any one of the several causes. It in no way contravenes the evident intention of the grantor and ancestor to treat her descendants with equal consideration by giving each what in substance and effect was an equal one-third share of the whole tract.

"On August 25, 1913, the defendants, John Arbitter and Lydia Arbitter, his wife, became the owners of parcel number three. Their chain of title comes by and through mesne conveyances from Howard N. Newkirk and his grantees. The description of the land in the deed to the Arbitters adopts the language employed by Mrs. Joy in conveying the parcel to her grandson, Howard. That language is the following:

" 'Land in the township of Hamtramck, Wayne county, Michigan, described as:

" 'The central one-third of all of that part of the east ½ of the southwest ¼ of section 9 of township one south, of range 12 east, that is situated south of the boulevard and east of the right-of-way of the Detroit & Bay City Railroad, having a frontage on said boulevard of 211 feet and containing 7¼ acres of land, more or less.'

"The plaintiff acquired parcel number three from the Arbitters on April 24, 1920, through the intervention of Andrew G. Stevenson as grantee of the

Arbitters, Stevenson having acquired title only for the purpose of transferring it to the plaintiff. This he did at once. The description of the land thus conveyed to the plaintiff by the Arbitters follows the language in the instrument which conveyed the property to the Arbitters as grantees.

"In addition, at the instance of the grantor's counsel, the following language was inserted in the deed immediately following the description just mentioned:

" 'And being the same piece or parcel of land described in and conveyed by a deed of Howard N. Newkirk by Ari E. Woodruff, a circuit court commissioner, to the Dime Savings Bank of Detroit, Michigan, said deed being dated April 16, 1900, and recorded in liber 545 of deeds, page 20, Wayne county records, and in turn conveyed by the said Dime Savings Bank to the parties of the first part hereto by warranty deed, dated August 25, 1913, and recorded in liber 919 of deeds on page 231, Wayne county records.'

"Parcel number one was acquired on April 29, 1912, by the defendants, Edward Adiska and Elizabeth Adiska, his wife. The land conveyed was described in the same language as that employed by Mrs. Joy in deeding it to her grandson, William.

"The defendants, Robert Gersabeck and Amanda Gersabeck, his wife, on September 1, 1921, acquired a one-third interest in parcel one from Mr. and Mrs. Adiska. The Adiskas and Gersabecks on April 11, 1925, sold parcel number one to the defendants, Nickolas Zuk and Pauline Zuk, his wife, by land contract. Upon August 11, 1923, the Adiskas and Gersabecks, and the Zuks caused parcel number one to be surveyed and subdivided into lots in accordance with a plat which was duly approved and recorded in the office of the register of deeds for Wayne county. Parcel one was thus subdivided into 55 lots. All of these lots have been conveyed by land contract or deed to *bona fide* holders without any knowledge of the issues which are being litigated in this cause. The subdivision referred to is named Davison Park subdivision.

"On May 20, 1912, the defendant, Detroit & Bay City Railroad Company, acquired title to parcel two. The deed vesting title describes the land in the same language as that employed by Mrs.. Joy in her grant to her grandson Stanley. The railroad is still the holder of the title.

"During the year 1925 the defendant, the city of Detroit, constructed a lateral sewer in the alley abutting the westerly side of this subdivision. The cost of construction, $2,492.24, was assessed upon the abutting land and the assessment roll turned over to the receiver of taxes for collection. The plaintiff has paid the first of the four annual payments levied by the city for the construction of this sewer in the amount of $623.06.

"It will have been observed that no survey of the whole tract nor of any of its three partitioned parcels is shown prior to that made for the creation of the Davidson Park subdivision. Doubtless this was due to the fact that until some time subsequent to 1920 all of this land was used as truck farm land.

"Early in the year 1920 the defendants, the Arbitters, through their agent, the witness Mr. Seitz, offered parcel three for sale to the plaintiff. The Arbitters honestly believed that their land contained, as their deed and abstract indicated, 7¼ acres of land, more or less. They represented it to Seitz as a tract of approximately 7 acres. Seitz submitted it to the plaintiff as a 7-acre parcel. The negotiations had between the plaintiff and Seitz in the first instance and later parleys which resulted in a sale all proceeded upon the assumption that the land had a content of approximately 7 acres. In fixing the price, it was dealt with on a basis of $5,000 per acre. The dominating factor in the negotiations was the understanding mutually and honestly entertained by the plaintiff and the Arbitters that they were dealing with a parcel containing that quantity of land.

"When the deal was about to be consummated, however, the Arbitters insisted that the broker's commission and the prospective city taxes for the year 1920 should be paid by the buyer. This was objected to by the plaintiff. These two items would entail an expenditure of $2,150. In order to persuade the plaintiff to assent to the assumption of this additional expense, the broker reduced his fee from $1,750 to the amount of $1,100, thus calling for an additional expenditure over and above the price of the land of $1,500 to cover both of these items. In order to persuade the plaintiff to assume this additional expense, it was argued that the land actually contained 7¼ acres. This argument prevailed, and the plaintiff, in addition to the agreed price of $5,000 per acre for 7 acres, agreed to take parcel number three for the sum of $36,500. The deal was then closed.

"It was not until 1926 that the plaintiff ascertained that the land thus purchased, instead of containing in excess of 7 acres, embraced only 6.47 acres. This was communicated to the plaintiff by the defendant railroad company which had made a survey of its holding, namely, parcel number two. Plaintiff then procured George Jerome in November, 1926, to survey the entire tract. The survey discloses that the frontage upon the boulevard, now known as Davison avenue, instead of being 635 feet as indicated by the three conveyances of Mrs. Joy, is in point of fact only 606.49 feet. In platting Davison Park subdivision, the surveyor proceeded upon the theory that parcel number one had a frontage of 213 feet on Davison avenue. In this conclusion it accordingly develops that he was in error. As a result, his plat of the subdivision overlaps parcel number three. Another consequence ensues. Not only are some of the lots of the subdivision in and upon the plaintiff's land, but the lateral sewer constructed by the city of Detroit has likewise been built in the plaintiff's land.

"The bill of complaint prays for nine distinct though inter-related kinds of relief. The bill is traversed by the defendants and is met by cross-bills in behalf of several of them. The plaintiff asks among other things for reformation of the Arbitter deed so that the boundaries of its tract may be definitely and correctly defined and for reimbursement of part of the purchase price. It seeks to have the plat of Davison Park subdivision vacated in so far as it affects the plaintiff's land. It prays for cancellation of the lateral sewer tax as illegal and an injunction restraining the collection of the unpaid portion of that tax. The defendant, the Detroit & Bay City Railroad Company, joins the plaintiff under a cross-bill in requesting a correct definition of the boundaries of parcels one, two and three in conformity with the survey of Mr. Jerome. The defendants, Arbitters, Adiskas, Gersabecks, and Zuks deny the right of the plaintiff to any relief whatsoever.

"It is appropriate at this juncture to say that the plaintiff is not chargeable with any laches. It filed its bill in July, 1927, and must thus be said to have acted seasonably.

"The first legal question logically confronting one is the determination of the character of the Arbitter sale to the plaintiff. Was this a sale in gross, or by the acre? The importance of determining this preliminary question is shown in the discussion in an analogous situation presented in the case of *Koch* v. *Bird*, 174 Mich. 594. It is true that the appeal in that case was abortive. The court was evenly divided. But there is an extended and instructive discussion of this question in the opinion written by Mr. Justice STONE and concurred in by three of his colleagues. See, also, *McComb* v. *Gilkeson*, 110 Va. 406 (66 S. E. 77).

"I have reached the conclusion that the sale was one by the acre. It is true that this result depends upon parol proof. In a like situation, Mr. Justice

STONE and his colleagues said, 'we are of the opinion that there was a mutual mistake of fact in respect to the number of acres in the farm which pervaded the whole dealing, including the making of the deed, and that this mistake was to an essential and material element of the contract.' They concluded that 'where the owner of the farm innocently, but untruly, states the quantity of the land contained therein, and a purchaser, in reliance upon the statement, enters into a contract and takes a deed, and subsequently discovers that the quantity is materially less than that stated, he is entitled to the interposition of a court of equity to correct the mistake' (p. 604).

"It is true that Mr. Justice MOORE and three of his colleagues dissented from this view. They relied in support of their position upon the case of *Martin v. Hamlin,* 18 Mich. 354 (100 Am. Dec. 181). Whatever may be said of the applicability or inapplicability of that decision to the facts of the case of *Koch v. Bird,* it seems to me to be distinguishable from the facts in the case at bar. In the *Martin Case,* 'the defendant represented the land as containing 110 acres, and said he would warrant it to contain quantity; and complainant thereupon verbally agreed to purchase the farm and pay $4,200 for it, if there should be that amount of land' (p. 609). This was a verbal agreement. It was followed by a further verbal agreement that the land should be surveyed, 'and if it fall short (of 110 acres), an amount proportioned to such deficiency should be indorsed on the first payment, to be secured by the mortgage complainant was to give for $1,500 of the purchase money. If the land should overrun, complainant was to pay for the excess at the same rate.' The foregoing verbal agreements were not stated to the scrivener and, of course, were not incorporated in the deed.

"There seems to me to be no ground for saying that any mutual mistake existed. There was a

clearly expressed doubt in the mind of the buyer as
to the acreage. There was a verbal reservation for
a survey for the resultant understanding for pay-
ment in the event of excess or deficiency in the land.
All of this rested in parol. Instead of there being
any mutual mistake, it seems to me there was an
express doubt as to the quantity of land involved.
By a subsequent survey the farm was found to con-
tain but 93½ acres. In such a situation it seems to
me that the holding in the *Martin Case* simply ap-
plied the familiar doctrine that these contempora-
neous verbal agreements were merged in or cut off
by the deed.

"Upon the facts of the present case I think the
authorities cited by Mr. Justice Stone and the doc-
trine which he himself enunciated are applicable to
this controversy.

"In the case of *Rathke* v. *Tyler,* 136 Iowa, 284
(111 N. W. 435), which he cites, the construction to
be given to the phrase 'more or less' in the instant
case is elaborated. It is there said:

" 'Where the sale is by the acre the differences presumed to
have been contemplated by the parties are only such as are due
to the errors incident to measurements by different surveyors and
the variation in the instruments used, and the words "more or
less" in the deed are treated as words of safety or precaution
merely, and intended to cover slight and unimportant inaccuracies.
* * * In a case where the difference is slight as compared with the
whole number of acres, courts, inasmuch as the parties have ex-
pressed themselves as being satisfied, whether the tract be more or
less, will not aid either party. * * * A court of equity will
grant relief if it clearly appears that there is considerable excess
or deficiency between the quantity actually conveyed and that
named in the deed, even though this be followed by the words
"more or less".' (pp. 600–601).

"I am of the view accordingly that the acreage
bargained for and bought by the plaintiff was not
delivered because of the mutual mistake of the par-
ties. The discrepancy is not so slight as to be over-
looked. It amounts to nearly three-quarters of an
acre, or about 10 per cent. of the property which was
supposedly purchased. The plaintiff is entitled to

be reimbursed a proportionate amount of the purchase money to cover this deficiency.

"What is the legal aspect of the holdings in the chain of title of parcel number one? These grantees and likewise all the grantees holding in parcels two and three take from a common grantor, Mrs. Joy. They have no greater rights than she conveyed. They are all chargeable with notice of the record title which had vested in her and of which she divested herself by the three conveyances to her grandchildren. These grantees all stand in the same situation as though she had deeded to each of them immediately. No claim of title by adverse possession intervenes in any way to change this legal situation. While it is true that some of the innocent purchasers for value of lots in the Davison Park subdivision will thus be deprived of what they bought and paid for, they have an adequate remedy at law open to them. The Adiskas, the Gersabecks and the Zuks are inescapably restricted in their possessory rights to the parcel conveyed to them from Mrs. Joy by and through mesne conveyances.

"Since the plat of parcel number one as recorded trespasses upon the rights of the plaintiff in and to parcel number three, it invades the rights of the plaintiff and clouds its title to the extent of the invasion. In so far as it effects this result, the plat should be vacated and the plaintiff's title cleared.

"The city of Detroit has constructed a sewer upon private land in the assumption that it was building it in a public alley. It had no legal right to do this. Its action in this regard must be invalidated and it must be restrained from any effort to collect the unpaid portions of the assessment levied for this purpose.

"Plaintiff asks for a return of the first assessment paid by it for the construction of the sewer. The city contends that the court is without authority to decree such reimbursement. The payment thus made has been illegally assessed against the plain-

tiff's property.  But the whole procedure followed in making the assessment was, however, upon its face regular and valid.  Neither in those proceedings nor from any contemporaneous fact was there anything to apprise the plaintiff that the tax was illegal, nor had the plaintiff any constructive notice of its illegality.  Facing the situation as it appeared to it, the plaintiff was confronted with a lien upon its property by virtue of this assessment under the city charter.  Payment in such circumstances is equivalent to a payment under compulsion (*Newberry v. City of Detroit,* 184 Mich. 188).  I think the plaintiff is entitled to a decree for the repayment of the sewer assessment paid by it on the strength of the decision in the *Newberry Case.*

"Another necessary consequence flowing from the conclusions above set forth is that the description of the land in parcels two and three be appropriately reformed and corrected to conform to the actual measurements of the premises as conveyed as shown by the survey of Mr. Jerome.  This, of course, will necessitate a corresponding correction in the plat of Davison Park subdivision."

Appellants Arbitter contend that they sold the parcel in gross, not by the acre, and that they should not be held to respond for deficiency.  We are in accord with the opinion of the trial judge.

The contention of the city of Detroit is that it may receive and retain sewer tax, as the sewer was in fact constructed in a public alley and not upon the premises of plaintiff.  It argues for error in the survey by the only surveyor employed and who testified in the case; that he should have taken as the west boundary of the west parcel the center of the railroad right-of-way instead of the east line of the right-of-way.  This contention is contrary to fact and contrary to the descriptions of the deeds.  It is

apparent that the original grantor, Mrs. Joy, and her grantees and subsequent holders, until near the time of making the survey, believed mistakenly that the whole tract contained nearly 21¾ acres and each of the three parcels nearly 7¼ acres. That the whole tract and hence each one-third thereof contained considerably less acreage is established beyond question. We think the trial judge correctly construed the three deeds, made simultaneously by Mrs. Joy to her grandchildren, and that he was right in charging the deficiency equally against all three parcels. This leaves the sewer in fact on plaintiff's premises and answers the city's defense.

Decree affirmed, with costs.

WIEST, C. J., and BUTZEL, McDONALD, POTTER, SHARPE, NORTH, and FEAD, JJ., concurred.